33230, 33283. WILLIAMS et al. v. ATHENS NEWSPAPERS, INC.; and vice versa.

MARSHALL, Justice.

In the present case we are asked to determine whether "The Athens Observer," published by the Athens Observer, Inc., one of the defendants herein, is qualified under Code Ann. § 39-1103 (Ga. L. 1910, p. 87; 1953, Nov. Sess., pp. 271, 272) to be the official legal organ of Clarke County. Code Ann. § 39-1103 provides, "No journal or newspaper published in this State shall be declared or made the official organ of any county for the publication of sheriff's sales, judge of the probate court's citations or any other advertising commonly known and termed 'official or legal advertising' and required by law to be published in such county official newspaper, unless such newspaper shall have been continuously published and mailed to a list of bona fide subscribers for a period of two years, or is the direct successor of such journal or newspaper, and unless 85 per cent of the circulation of such newspaper or journal is paid circulation. No charge shall be made in the official organ of any county except upon the concurrent action of the judge of the probate court, sheriff and clerk of the superior court of said county or a majority of said officers: Provided, that in counties where no journal or newspaper has been established for two years the official organ may be designated by the judge of the probate court, sheriff and clerk of the superior court, a majority of these officers governing." What do the continuous-publication and 85-percent-paid-circulation requirements of the statute mean? These are the questions for decision.

"The Athens Daily News," which is published by Athens Newspapers, Inc., had been the official legal organ of Clarke County since 1966. By order dated September 1,

1977, the Sheriff of Clarke County, Larry Williams, who is one of the defendants in this case, and the Probate Judge of Clarke County, Margaret Hartman, another of the defendants, filed with the Clerk of the Superior Court of Clarke County, King Crawford, an order designating "The Athens Observer" as the official legal organ of the county, effective January 1, 1978. These county officers testified that after determining that "The Athens Observer" was qualified under Code Ann. § 39-1103, they decided to make the "Observer" the county's official legal organ, primarily because the "Observer" is locally owned and the "Daily News" is not.

As found by the trial court, "The Athens Observer" was first published on January 3, 1974, as a free weekly newspaper, except for a small number of paid subscribers. Beginning February 5, 1976, the "Observer" began to charge 10¢ for each copy of the paper. It was stipulated at trial that the paid circulation of the "Observer" was less than 85 percent prior to February 5, 1976. The trial court found that "The Athens Observer" did not have 85 percent average paid circulation for the two-year period prior to September 1, 1977. However, an auditor employed by the Audit Bureau of Circulation testified that the paid circulation for the September 1, 1977, issue of the "Observer" was 97.8 percent. This testimony was not contradicted either by other testimony or by the trial judge's findings.

The trial court also found that the "Observer" was not published during the weeks of August 22 and August 29, 1974. Nor was the "Observer" published during the weeks of Christmas in 1974, 1975 and 1976, at which time employees of the paper were given customary Christmas vacations.

On September 22, 1977, Athens Newspapers, Inc., filed the complaint in this case against the Sheriff of Clarke County, the Judge of the Probate Court of Clarke County, the Clerk of the Superior Court of Clarke County, and Athens Observer, Inc. The complaint alleged that the "Observer" was not qualified under Code Ann. § 39-1103 to be the official legal organ of Clarke County. The complaint prayed that the court, through issuance of the writ of mandamus, direct the sheriff, probate judge, and

clerk of superior court, or a majority of these officials, to rescind the order designating "The Athens Observer" as the official legal organ. The complaint also prayed that "The Athens Observer" be enjoined from holding itself out as the official organ.

Following waiver of trial by jury by the parties, the superior court rendered a judgment in which it concluded that "The Athens Observer" had met the requirement of Code Ann. § 39-1103 of being continuously published for a period of two years, despite the small suspensions for Christmas vacations and otherwise. The trial court ruled that if the General Assembly had intended to require publication of the county's legal organ for consecutive weeks during the two-year period, the General Assembly would have so stated, citing in comparison the following cases from other jurisdictions: City of Plainfield v. Courier-News, 72 N. J. 171 (369 A2d 513) (1976); State v. Proctor, 361 SW2d 802 (Mo. 1962); In re Christensen, 104 C. A. 2d 375 (231 P2d 152) (1951); Bd. of Commrs. of Decatur County v. Greensburg Times, 215 Ind. 471 (19 NE2d 459) (1939).

The trial court ruled that, in order to make sense, the provision of Code Ann. § 39-1103 requiring 85 percent of the circulation of the legal organ to be paid circulation requires 85 percent paid circulation for the two-year period required for continuous publication. As a result, the court ruled that "The Athens Observer" was not qualified under the statute to be the official legal organ for Clarke County.

The trial court granted the mandamus and injunctive relief prayed for by the plaintiff. The court further ordered that the "Daily News" continue to be the official legal organ of Clarke County pending a proper designation of a newspaper qualified to be the county's legal organ. The trial court also ruled that defendant King Crawford, Clerk of Clarke Superior Court, had committed no act or omitted to do any act which would subject him to any relief sought by the plaintiff, and a judgment was entered in his favor.

The sheriff, the probate judge, and "The Athens Observer" appeal, arguing that under Code Ann. § 39-1103 a newspaper sought to be designated as the

official legal organ of a county is only required to have 85 percent paid circulation on the date of its designation.

The "Daily News" cross appeals, arguing that the trial court erred in finding that "The Athens Observer" met the requirement of Code Ann. § 39-1103 of having been continuously published for a period of two years. The "Daily News" also enumerates error upon the grant by the trial court of the superior court clerk's motion to dismiss. *Held:*

1. The trial court erred in ruling that under Code Ann. § 39-1103, a newspaper sought to be designated as the official legal organ of a county must have 85 percent paid circulation for the two-year period prior to its designation.

The trial court premised this construction of the paid-circulation requirement of Code Ann. § 39-1103 on the following rule of statutory construction: "In all interpretations, the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy. Grammatical errors shall not vitiate, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands." Code § 102-102 (9).

Prior Code § 39-1103 (Ga. L. 1910, p. 87) contained no requirement that a newspaper, to qualify as the official organ of any county, must have 85 percent of its circulation as paid circulation. In 1953 (Ga. L. 1953, Nov. Sess., pp. 271, 272) the General Assembly added this requirement by repealing the earlier Code section, and reenacting it in identical form except for the insertion of the 85-percent-paid-circulation requirement.

The appellants argue that this prong of Code Ann. § 39-1103 does have meaning when it is construed as requiring the county's official legal organ to have 85 percent paid circulation only at the time of its designation as legal organ. The appellants argue, furthermore, that this is the plain meaning of the statute and that under such decisions as *Bd. of Lights &c. v. Craddock,* 228 Ga. 697 (187 SE2d 852) (1972) and cits., the trial court was not authorized to construe the statute except according to its terms. We agree.

The plain wording of the statute is that, "No journal

or newspaper . . . shall be declared or made the official organ of any county . . . unless such newspaper *shall have been* continuously published . . . for a period of two years, . . . and unless 85 per cent. of the circulation of such newspaper or journal is paid circulation" (Emphasis supplied.) Thus, by the very terms of the statute, the continuous-publication requirement is phrased in the past tense, and the 85-percent-paid-circulation requirement is phrased in the present tense.

We agree with the trial court that the General Assembly intended the continuous-publication requirement as "evidence of stability that a newspaper ought to have before it could enjoy the status of a legal gazette which must carry legal advertisements that affect the lives and property of citizens of this State." However, in our opinion, as the statute is worded the 85-percent-paid-circulation requirement is intended more to ensure that the legal organ of the county is a newspaper or journal of widespread dissemination. This statutory purpose is subserved if the newspaper does in fact have 85 percent paid circulation at the time of its designation as official legal organ.

Furthermore, that the 85-percent-paid-circulation requirement is not one of a two-year duration is strongly suggested by the following language in *New Era Pub. Co. v. Guess,* 231 Ga. 250, 254 (201 SE2d 142) (1973): "Finally, there was no dispute in the evidence that 'The Decatur-DeKalb News' was a newspaper published in DeKalb County, Georgia, which had *at the time of trial* more than eighty-five per cent paid circulation." (Emphasis supplied.)

2. The trial court was correct in ruling that "The Athens Observer" met the requirement of Code Ann. § 39-1103 of having been continuously published for a period of two years.

Although it is not directly controlling, we rest our decision on *Carter v. Land,* 174 Ga. 811 (164 SE 205) (1932). The question presented there was whether the "Catoosa County Record" qualified under the predecessor of Code § 39-1101 to be the official organ of Catoosa County. Code § 39-1101 provides in material part that: "The sheriffs and coroners shall publish weekly, for four

weeks, in some newspaper published in their counties respectively,—and if there be no such paper published in the county, then in the nearest newspaper having the largest or a general circulation in such county—notice of all sales of land and other property executed by him. . ." The court in *Carter v. Land* determined that the "Catoosa County Record" was not "published" in Catoosa County within the meaning of the statute. The court also determined that it had not been conclusively shown that the "Record" was the "nearest newspaper," to the county, within the meaning of the statute. Notwithstanding this, this court in *Carter v. Land* (p. 815) held: "The statute delegates to named county officials authority to select the advertising medium. It requires the award to be made to the newspaper 'having the largest circulation *or* a general circulation in the county.' Accordingly, the officers have a discretion as to whether the award shall be made to the one or to the other; that is, to the one having the largest circulation or to the one merely having general circulation. Thus the General Assembly allowed the exercise of a discretion. Also, where there is no newspaper published in the county, then the 'nearest' shall be selected. Is it essential to ascertain the exact distance from the county; and if so, from what point in the county shall the measurement be taken? Shall it be by official surveyors? In such circumstances all interested parties would of course wish to have a voice in the selection of the surveyors, and that might mean a corps of surveyors. These contingencies show the necessity for construing the code section liberally and not literally. The General Assembly must have known of the difficulties of requiring a literal compliance. Therefore we hold that it was the intention of the General Assembly that the county officers should be held only to a substantial compliance with the statute liberally construed."

The reasoning employed in *Carter v. Land* for holding the county officers there "only to a substantial compliance with the statute liberally construed" has equal force here.

In addition, there was evidence that it is customary practice for small rural newspapers in this state to suspend publications for a period of usually a week in

either the summer or during Christmas to give their employees an annual vacation. Furthermore, it appears that the Georgia Press Association advises such newspapers serving as the county legal organ as to how to continue publishing legal advertisement during vacation periods. One of the editors of "The Athens Observer" testified that as county legal organ, the "Observer" would discontinue the practice of suspending publication during Christmas. Under these circumstances, we can see no justification in ruling that the "Observer's" failure to publish the paper during Christmas weeks for the prior two years should disqualify it under the statute from being the legal organ of Clarke County.

3. Our holding in Divisions 1 and 2, supra, that the sheriff and probate judge were authorized under Code Ann. § 39-1103 to designate "The Athens Observer" as the official legal organ of Clarke County, renders moot the trial court's dismissal of the clerk of superior court as a party defendant.

*Judgment reversed on main appeal; affirmed on cross appeal. All the Justices concur.*

ARGUED FEBRUARY 13, 1978 — DECIDED APRIL 4, 1978 —
REHEARING DENIED APRIL 25, 1978.

*Griffeth, Henry & Marshall, David W. Griffeth, Rupert A. Brown,* for Williams et al.
*Erwin, Gibson & McLeod, Larry V. McLeod, Gary B. Blasingame, Darrel Begnaud, M. Steven Heath, Rupert A. Brown,* for Athens Newspapers, Inc. et al.

