A90A2218. COMMUNITY NEWSPAPERS, INC. v. BAKER et al.
(402 SE2d 545)

SOGNIER, Chief Judge.

Community Newspapers, Inc., publisher of The White County News, the official organ for White County since 1976, brought this action for mandamus and injunctive relief against The Telegraph, Inc. and the White County Sheriff, Superior Court Clerk, and Probate Court Judge, challenging the decision to designate The Telegraph as the official organ. After reviewing the facts stipulated by the parties, the trial court denied the requested relief. Community Newspapers filed an appeal with the Supreme Court, which transferred the case to this court for disposition.

Appellee The Telegraph, Inc. (hereinafter "appellee newspaper") began publication in November 1982 and, with the exception of a small number of paid subscriptions mailed outside the county, its 10,000 copies were distributed free of charge by third-class mail to all 5,371 White County postal patrons and to others in nearby areas. There were 117 paid subscribers in 1988 and 141 in 1989, and the parties have stipulated that some of those subscribers owned property in White County and lived within the county part time, although none was a permanent resident of the county. Appellee newspaper converted to paid circulation on March 6, 1990, with 2,215 paid copies comprising 91.6 percent of the total circulation of 2,418. Again, virtually all of the paid subscribers resided outside the county. On March 26, 1990, appellees sheriff, clerk, and probate judge met and decided to change the official organ of the county from appellant to appellee newspaper effective May 1, 1990.

Disposition of this case turns on the interpretation of OCGA § 9-13-142, which sets forth the prerequisites for official organs and establishes the procedure for changing the designation of the official organ. The subsection at issue is OCGA § 9-13-142 (a), which provides that "[n]o journal or newspaper published in this state shall be declared or made the official organ of any county for the publication of . . . 'official or legal advertising' . . . unless the newspaper shall have been continuously published and mailed to a list of bona fide subscribers for a period of two years . . . and unless 85 percent of the circulation of the newspaper or journal is paid circulation." Appellant contends

the trial court erred by concluding appellee newspaper met the requirement of being "continuously published and mailed to a list of bona fide subscribers for a period of two years" because its subscribers were not county residents. Appellant contends that the statute should be construed with OCGA § 9-13-140 (a), which provides that notices of judicial sales must be published in newspapers located in or near the county, and that when so construed the "continuously published" requirement of OCGA § 9-13-142 evinces a legislative intent to require that the subscriber list of the official organ be composed of residents of the county.

We do not agree, as the plain language of the statutes does not support appellant's interpretation, and the Supreme Court has construed these statutory provisions in a manner that precludes the construction urged by appellant. The court has held that the "continuously published" requirement of OCGA § 9-13-142 and its predecessor, Ga. Code Ann. § 39-1103, was intended by the legislature as " 'evidence of stability that a newspaper ought to have before it could enjoy the status of a legal gazette which must carry legal advertisements that affect the lives and property of citizens of this State.' " *Williams v. Athens Newspapers*, 241 Ga. 274, 278 (1) (244 SE2d 822) (1978). The *Williams* court did recognize that the legislature intended to ensure "widespread dissemination" of the newspaper designated as the legal organ, but found that the 85 percent paid circulation requirement was the means by which that goal was to be met, and held that the test was satisfied if the newspaper met the 85 percent requirement at the time it was designated as official legal organ. Id.

The Supreme Court also has agreed with appellant's theory that OCGA § 9-13-142 and OCGA § 9-13-140 (former Ga. Code Ann. § 39-1101) should be construed together, holding in *McGinty v. Chambers*, 182 Ga. 341, 342-343 (185 SE 513) (1936), that the notices described in OCGA § 9-13-140 must be published in a newspaper meeting the "continuously published" requirement of OCGA § 9-13-142. However, the court has reached a different conclusion from that urged by appellant, interpreting OCGA § 9-13-140 as requiring that the *editing and publishing operations* of the newspaper in which official notices are published be located as close to the county as possible. *McGinty*, supra at 342-344; *Carter v. Land*, 174 Ga. 811, 814-815 (1, 2) (164 SE 205) (1932) (construing Civil Code § 6062 (1910), predecessor to Ga. Code Ann. § 39-1101 and OCGA § 9-13-140, as evincing legislative intent to encourage local investment). Thus, the court concluded that the legislature's intention was to ensure that the legal organ is continuously published in or near the community it serves.

Given this interpretation of the legislative purpose and meaning of OCGA § 9-13-140 and OCGA § 9-13-142, we cannot agree with appellant that the statutes, construed together, compel a finding that

the legislature intended that the bona fide *subscribers* be local. Certainly the General Assembly intended that the official organ be a newspaper of widespread dissemination, but the Supreme Court has held that requirement to be satisfied by the 85 percent paid circulation test, *Williams,* supra at 278, which appellee newspaper clearly met. The statutes have been construed to require local *publication,* but nothing in the plain language of either statute suggests that local *circulation* is required for an official organ. The "continuously published" requirement is intended to ensure stability of publication and distribution, and there is no reason to conclude the legislature intended for that goal to be met by requiring local dissemination.

We also cannot agree with appellant that "bona fide subscribers" should be interpreted to mean county residents. Considering the ordinary meaning of "bona fide," see *Sabel v. State,* 248 Ga. 10, 12 (2) (282 SE2d 61) (1981), we note that it has been defined as "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud," Black's Law Dictionary, 4th ed., p. 223; and as "[i]n or with good faith; without fraud or deceit; genuine." Webster's New Intl. Dictionary, 2d ed., p. 305. Accordingly, we construe the statute as requiring that the subscribers be legitimate subscribers who have paid adequate consideration for their subscriptions and who regularly receive the publication, not persons fraudulently listed by the newspaper who have not actually purchased subscriptions or whose subscriptions were paid for by the newspaper to inflate its subscriber list. While appellant makes a persuasive argument that a local circulation requirement should be imposed, that is a matter for the legislature, not the appellate courts.

The undisputed evidence shows that the trial court correctly concluded as a matter of law that appellee newspaper was continuously published and mailed to a list of bona fide subscribers for two years prior to its designation as official organ. Accordingly, appellant's petition properly was denied. See *New Era Pub. Co. v. Guess,* 231 Ga. 250, 255 (201 SE2d 142) (1973).

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 22, 1991.

*Steward, Melvin & House, Frank Armstrong III, Hull, Towill, Norman & Barrett, David E. Hudson, James B. Ellington,* for appellant.

*Smith, Gilliam & Williams, Kelly Ann Miles, Burroughs, LeFevre & Wynne, J. David Burroughs,* for appellees.