**GOAD–BALLINGER POST 69, Appellant,**

v.

**Paul S. McNEILL, Director of Revenue, Respondent.**

**No. WD 37311.**

Missouri Court of Appeals, Western District.

July 8, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

Application to Transfer Denied Oct. 14, 1986.

Louis J. Nolan, Springfield, for appellant.

William L. Webster, Atty. Gen., Melodie A. Powell, Asst. Att. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The appeal comes from a final decision of the Administrative Hearing Commission to sustain the decision of the Director of Revenue to revoke the bingo license issued to Goad-Ballinger Post 69. We affirm.

Post 69, an American Legion adjunct in Springfield, Missouri, was licensed under Chapter 313 to conduct the game of bingo on the premises. The license issued on

July 1, 1982 and was renewed for fiscal year 1983. Post 69 was notified by the Director of Revenue on October 5, 1983, that the license was revoked. The notice cited twelve violations of Chapter 313 and of department regulations, which spanned the period from July 9, 1982 to September 16, 1983. The decision of the Director was appealed to the Administrative Hearing Commission. The Director elected to present its case at the review hearing on only three cited violations: (1) the conduct of a bingo game without the display of license on September 16, 1983, (2) the use of bingo equipment on September 16, 1983 not marked with the name of the owner, and (3) Post 69 was a gambling promoter and so not eligible for license under Chapter 313.

At the conclusion of the evidence, the Administrative Hearing Commission determined that Post 69 was not a *gambling promoter* within the sense of § 313.035, RSMo Supp.1984,[1] but sustained the revocation on the articulated findings of fact and conclusions of law that on September 16, 1983, Post 69 conducted bingo on the premises without the display of license and used bingo equipment not marked by the name of the owner.

On September 16, 1983, the bingo auditor for the Department of Revenue—Kessler— conducted an inspection of the Goad-Ballinger American Legion Post 69 premises. The inspector was in the company of department trainee, Scott. They entered the building at the middle, or entrance, level, where the main bingo activity was conducted. The office was upstairs, and the bar area—where bingo was also played—was downstairs. The two inspectors purchased bingo cards, and sat down. Kessler then asked where he could purchase pull tabs [an activity then illegal], and was directed to a corner room, where Kessler made the purchase. The two then went downstairs, bought drinks, and played bingo. They returned upstairs and asked to speak with the member in charge, and were directed to Keller, the Post Commander.

They asked Keller to see the bingo license, and he replied that it was upstairs, on the desk in his office. The glass cover had broken and was removed to the office for repairs. The inspector informed Keller that the license was required to be displayed in the bingo game area in general view, and that the neglect to post the license was a violation of law. The license was returned to the bingo game area that evening. The inspectors then asked Keller to allow examination of the bingo equipment. They discovered that the agitator was not marked with the name of the owner, Post 69, and that the flash board[2] also lacked the mark of ownership. Keller informed them that the plastic identification stickers must have fallen off those items of equipment. Keller acknowledged that the Vietnam Veterans Memorial Post 69 rented the downstairs portion of the Goad-Ballinger building one night per week for bingo. Keller was aware that when a third party uses the licensee Goad-Ballinger premises

1. Section 313.035 renders ineligible for licensure, among others, "[a]ny person who is or has been a professional gambler or gambling promoter." The evidence was that shortly after the issue of the license—on July 9, 1982, and again on September 16, 1983—agents of the Department of Revenue purchased pull tabs from Post 69 while that licensee conducted bingo on the premises. At that time, the sale of pull tabs was an illegal activity. [The amendment to § 313.005 adopted thereafter, in 1984, RSMo Supp. 1984, included the pull tab game within the definition of *bingo*, so that it became a legal activity for a licensee to conduct.] It was the contention of the Department of Revenue that the pull tab sales at a time when that activity was still illegal rendered Post 69 a *gambling promoter* under than extant § 313.035, and

hence ineligible for license. The Administrative Hearing Commission determined, that whatever illegality the sale of the pull tabs constituted, that activity did not constitute the infractor a *gambling promoter* for the purpose of eligibility for licensure.

2. The flash board, a device about three feet by six feet, black in color with white numbers, was mounted on the wall. [It is, presumably, the instrument which records the numbers drawn from the agitator]. The agitator, the Administrative Hearing Commission finding of fact explains, is the tumbler which houses the bingo balls, and hence, from which the bingo numbers are drawn.

for bingo, the licensee cannot lease the third party the premises and the bingo equipment, as well. Keller acknowledged that Goad-Ballinger leased to the Vietnam Veterans both the premises and the bingo equipment, but that arrangement, Keller insisted, was unrelated to the neglect to keep the equipment marked.

The Director of Revenue notice of revocation to Goad-Ballinger, as we note, cited twelve violations of statute and regulations. The Director presented the case for revocation to the Administrative Hearing Commission on three of the cited violations, and the Administrative Hearing Commission sustained the revocation on the determination that two of the cited incidents constituted violation of a statute and of a regulation.

Section 313.070, RSMo Supp.1983 [the enactment in effect at the time of the cited incidents of violation] provides:

Any license issued under [this act] *shall be revoked* pursuant to law *if it is found that the licensee or any person connected therewith has violated any provision of [this act] or any rule or regulation of the director of revenue* adopted pursuant to [this act]. [emphasis added]

There was extant at the time of the cited incidents of violations, § 313.030, RSMo Supp.1983, which declared:

Each licensee shall display the license in a prominent place in the area where it is to conduct bingo.

There was extant, also, the duly promulgated regulation 12 CSR 10–12.180 Inventory and Ownership of Bingo Apparatus:

(1) Accurate records must be maintained indicating the quantity and ownership of all aparatus used directly in the conduct of bingo. *Owner's name must be indicated on such equipment.* [emphasis added]

The Administrative Hearing Commission determined as fact that on September 16, 1983, the Goad-Ballinger bingo license was not displayed in the bingo game area and that two pieces of equipment—the flash board and the agitator—were not marked with the name of the owner. The Adminis-

trative Hearing Commission concluded as a matter of law, that the failure to display the license violated § 313.030, RSMo Supp.1983, and that the failure to mark the equipment violated department regulation 12 CSR 10–12.180, and hence affirmed the Director revocation of license under 313.-070, RSMo Supp.1983.

A decision of the Administrative Hearing Commission will be upheld when authorized by law and supported by competent and substantial evidence upon the whole record, and if the exercise of authority by that tribunal does not create a result clearly contrary "to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency." Section 621.193, RSMo Supp.1984. Where the question posed is one of law, of course, that determination is for the independent judgment of the court of review, and for correction, where erroneous. *James v. TRES Computer Systems, Inc.,* 642 S.W.2d 347, 348[1–3] (Mo. banc 1982).

■ The determination of the Administrative Hearing Commission that on September 16, 1983, the Goad-Ballinger bingo license was not prominently displayed in the area where the bingo game was conducted rests upon competent and substantial evidence, as does the determination that the flash board and tumbler—two pieces of bingo equipment owned by the licensee—were not marked with the Goad-Ballinger name. There is no contention that the want of display of license and mark of ownership on the equipment, once found as facts, do not constitute a violation of § 313.030 and of 12 CSR 10–12.180. The contention is, rather, that an administrative order to revoke a license on infractions, each *de minimis,* bespeaks an arbitrary, capricious, and unreasonable abuse of discretion. amenable to correction on judicial review.

Goad-Ballinger acknowledges that the statute in effect on the dates of the infraction and of the revocation of license by the Director of Revenue declared with peremptory tone [§ 313.070, RSMo Supp.1983]:

that the bingo license of any licensee found to have violated *any* provision of the act or *any* rule or regulation adopted by the Director of Revenue under the authority of the act *shall be revoked.* Goad-Ballinger does not dispute that "on the face of these two statutes [the requirement to display license under § 313.030 and the mandatory revocation for such an infraction under § 313.070]" the Director "appears to have no choice but to revoke [the Goad-Ballinger] license" for such an infraction. Goad-Ballinger argues, nevertheless, that the imperative cast of the statute is only ostensible, but when § 313.070 is read with other parts of the enactment, the purpose appears to confer on the Director "the option to suspend rather than the absolute legal duty to revoke a license for [this] type of *de minimis* violation." The provisions of §§ 313.005 to 313.080, RSMo Supp.1983, read as an integral enactment, rather, dispel altogether the arguments that the principle of *de minimis* appertains, or that [under the statute as then written] the Director was allowed option at all, but to revoke for a violation of the statute or regulation.

The option to suspend rather than only to revoke a bingo license as a sanction for infraction, Goad-Ballinger argues, arises by implication from Application for License § 313.020, RSMo Supp.1983. That statute prescribes that any application for licensure devised by the Director require, among other responses, "[a] statement as to whether the organization has had *any previous application refused, revoked or suspended.*" [emphasis added] That provision was a component of the original bingo licensure act of 1981, and remains a component of the act. That provision, however,

articulates a refusal, revocation or suspension of a previous *application for license,* and not of the issued license, itself. The enactment [§ 313.015, RSMo Supp.1983] reposes in the Director the power *to issue a license* to conduct bingo upon the application of the designated nonprofit organizations who meet the requirements of §§ 313.005 to 313.080, and hence, by implication, reposes in the Director the power also to refuse an application for license. If we may assume that the revocation and suspension of an *application for license* § 313.020 mentions is not merely an anomaly of legislation [and so fit for rejection under settled principles of statutory construction, *Leibson v. Henry,* 356 Mo. 953, 204 S.W.2d 310, 315 (Mo. banc 1947)], but is meant as a function of the *application for license* procedure, the policy of the integral act expressed imperatively through *license revocations for violations § 313.070* then extant,[3] allows implication only that revocation of license follows upon a violation of the act by a licensee. *State ex rel. Henderson v. Proctor,* 361 S.W.2d 802, 805[1] (Mo. banc 1962).

■ The scheme of the enactment is not only to license and regulate the conduct of bingo games, but also to expose the violator to prosecution and punishment as an offense against public safety and morals.[4] It allows the specified nonprofit organizations, already qualified as exempt from federal taxation, the boon of the bingo games revenue for eleemosynary purposes, and then subjects the licensee to stringent restrictions and regulations of that activity, and then, in unconditional terms, treats a violation of the act not only as cause for revocation but as a public wrong. That is to say, the act is not only a public law, but

**3.** The sanction of *mandatory revocation* for violation of any provision of the act or any rule or regulation promulgated by the Director under the authority of the act expressed as § 313.070 in the original enactment in 1981, RSMo Supp. 1981, has since been replaced by the sanction of *mandatory revocation or suspension* in § 313.-070 as amended in 1984, RSMo Supp.1984, and as still effective. There is no contention that the 1984 amendment governs the infractions of September 16, 1983 cited against Goad-Ballinger or the administrative revocation of license entered

716 S.W.2d—8

by the Director on October 5, 1983. Nor does Goad-Ballinger contend that any rule of retrospectivity or any operation of law entitles Goad-Ballinger to the benefit of the amendment.

**4.** A violation of the act is a misdemeanor. Section 313.080, *Violations, penalty* provides:

Any person who violates any provision of sections 313.005 to 313.080 shall be guilty of a class A misdemeanor.

RSMo Supp.1984.

also a penal law. *Garner v. Teamsters, Chauffeurs & Helpers Local Union # 776,* 346 U.S. 485, 494, 74 S.Ct. 161, 167, 98 L.Ed. 228 (1953); *Tabor v. Ford,* 241 Mo. App. 254, 240 S.W.2d 737, 740[2] (1951); 82 C.J.S., *Statutes* § 389 (1953). The usual rules of construction, to be sure, accord to penal statutes no greater breadth than is warranted by the plain terms, and to the person affected, the favor of doubt even as to penalty. *State v. Wilbur,* 462 S.W.2d 653, 657[2–5] (Mo.1971); 3 Sutherland, Statutory Construction § 59.03 (4th ed. 1974). That rule, however, does not apply where— as here—there is no fair doubt, where the true legislative intent springs clearly from unambiguous words of enactment. *State ex rel. Peach v. Bloom,* 576 S.W.2d 744, 746[2] (Mo. banc 1979); *State v. Wilbur,* 462 S.W.2d at 657[2–5]. We are enjoined by § 621.193 to uphold a decision of the Administrative Hearing Commission "authorized by law and supported by competent and substantial evidence upon the whole record" and if the result does not clearly contradict "the reasonable expectations of the general assembly" as determined by our review. § 621.193. We conclude that the act, as then written, allowed option to the Director only to revoke a bingo license for an infraction, and that the decision of the Administrative Hearing Commission, not only rests on substantial and competent evidence and is otherwise authorized by law, but comports altogether with the intendment of the act—and hence with the "reasonable expectations of the general assembly at the time such authority was delegated to the agency."

That very manifest intendment of the enactment—that a violation subjects the licensee to revocation as well as prosecution—dispels the Goad-Ballinger argument that *de minimis* impinges to palliate the infractions from a cause for revocation to a mere technical noncompliance the law ought not to officially entertain. *De minimis non curat lex*—the law is not concerned with trifles—is a maxim of the common law. *Lambert v. Hartshorne,* 65 Mo. 549, 551 (1877). The corpus of the common law as well as its maxims and principles are adopted into our jurisprudence by § 1.010, RSMo 1978, and are given force as the rule of action and decision in this state. *Springfield Traction Co. v. Dent,* 159 Mo. App. 220, 140 S.W. 606, 611[3] (1911); *Hogan Motor Leasing, Inc. v. Avis Rent-A-Car System, Inc.,* 512 S.W.2d 427, 428[2] (Mo.App.1974). In terms of a duty under a public statute, as §§ 313.030, 313.070 and 12 CSR 10–12.180 prescribe, it is not the negligibility or commonness of the infraction [as the Goad-Ballinger argument assumes] which determines triviality under that maxim, and hence a subject matter beyond the interest of the law to entertain, but whether the policy of the statute renders the conduct permissible. *Concerned Parents v. Caruthersville School District,* 548 S.W.2d 554, 562[12, 13] (Mo. banc 1977). The enactment declares a violation to be a public wrong, and gives redress by a civil revocation of license as well as by a criminal prosecution. Thus, the enactment manifests a policy to treat a violation as an impermissible infringement of public right, and not as a matter *de minimis,* too insubstantial for the concern of the law.

The decision of the Administrative Hearing Commission is affirmed.

All concur.

