STATE of Missouri, at the Relation of Lane
B. HENDERSON, Attorney for the Admin-
istrator of the Estate of Frank Allen
Schwada, Relator,

v.

Thomas V. PROCTOR, Judge of the Probate
Court of Shelby County, Missouri, and
Mary E. Hartgrove, Clerk of the Probate
Court of Shelby County, Missouri, Re-
spondents.

No. 49529.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1962.

Lane B. Henderson, Shelbina, relator.

Robert C. Smith, Columbia, Smith &
Lewis, Columbia, of counsel, amicus curiæ.

HOLLINGSWORTH, Judge.

This is an original proceeding in man-
damus brought in the name of the State
of Missouri at the relation of Lane B.
Henderson, attorney for Raymond Schwada,
the duly appointed, qualified and acting ad-
ministrator of the estate of Frank Allen
Schwada, deceased, late a resident of
Shelby County, against the respondents
Thomas V. Proctor and Mary E. Hart-
grove, respectively, the Judge and Clerk
of the Probate Court of said County. The
petition seeks a peremptory writ of man-
damus directed to respondents requiring
them to cause to be published in The Clar-
ence Courier, a weekly newspaper published
in Shelby County, notice of the appointment
of Raymond Schwada as administrator of
said estate and notice to the creditors of the
decedent to file their claims in said court,
as required by § 473.033 RSMo 1959, V.
A.M.S. (to which revision all statutory ref-
erences herein are made). That section
provides: "The clerk, as soon as letters
testamentary or of administration are
issued, shall cause to be published in
some newspaper a notice of the appoint-
ment of the executor or administrator, in
which shall be included a notice to creditors
of the decedent to file their claims in the

court or be forever barred. The notice shall be published once a week for four consecutive weeks. * * * "

Respondents waived service of the preliminary writ and duly filed their joint return, in which they assert, in substance, that The Clarence Courier, herinafter referred to as the "Courier", is not qualified by the laws of this State to make lawful publication of the notices above described and that respondents "owe an obligation to be sure that the newspaper handling said notices does qualify as a proper newspaper for said purpose."

The only briefs filed in the cause were that of relator and, by leave of court, that of The Missouri Press Association, as amicus curiae. The facts are set forth in the petition and return and are not in dispute.

Frank Allen Schwada, a resident of Shelby County, died on the 4th day of December, 1961. Raymond Schwada, a resident of said county, was appointed and is administrator of said estate. Following appointment, he, on December 19, 1961, designated in writing the Courier as the newspaper in which the notice of his appointment and notice to the creditors required by § 473.-033, supra, should be published. Section 472.100, par. 2 subpar. (2), requires that notices such as those required under § 473.033 be given in the manner following: "(2) By publishing a copy of the notice in some newspaper qualified to publish legal notices under chapter 493, RSMo, and having general circulation within the county in which the court is held for the time required by law or court rule or order. * * The executor, administrator, or other person at whose instance any notice by publication is required, may designate the newspaper in which such notice is to be published, * * *."

The respondent judge, by order entered of record, directed the respondent clerk to refrain from publishing said notice in the Courier and the clerk, in compliance with said order, advised the administrator and his counsel that respondents refused to publish said notices in the Courier on grounds it was not a proper paper for the acceptance of legal publications under the provisions of § 493.050.

To the extent material, § 493.050 provides: "All public advertisements and orders of publication required by law to be made and all legal publications affecting the title to real estate, shall be published in some daily, triweekly, semiweekly or weekly newspaper of general circulation in the county where located and which shall have been admitted to the post office as second class matter in the city of publication; shall have been published regularly and consecutively for a period of three years; shall have a list of bona fide subscribers voluntarily engaged as such, who have paid or agreed to pay a stated price for a subscription for a definite period of time; provided, that when a public notice, required by law, to be published once a week for a given number of weeks, shall be published in a daily, triweekly, semiweekly or weekly newspaper, the notice shall appear once a week, on the same day of each week, and further provided, that every affidavit to proof of publication shall state that the newspaper in which such notice was published has complied with the provisions of this section; * * *."

The Courier was established as a weekly newspaper of general circulation in Shelby County in 1881 and has been published every week since that time, with the exception of the last week in December, 1960. Admittedly, it has for many years up to the time of the filing of this proceeding met all of the requirements of § 493.050, with that one exception. That omission was in accordance with a custom and practice of numerous small weekly newspapers in Missouri to publish each week during the year except for one week and thereby enable the owners and operators of such newspapers to take a vacation during that week. To avail themselves of the benefits of that custom, the publishers of the Courier, on February 18, 1960, changed its second class

·mailing permit so as to provide for its publication every Thursday except the last Thursday of each year and carried a formal statement to that effect in the paper; and, in accordance with said notice, did not publish the Courier that week. The respondent judge thereafter refused to allow legal advertisements and orders of publication required under § 493.050 to be published therein. Being advised of the position of the judge in that respect, the publishers of the Courier forthwith caused its second class permit to be changed back to its original provision for publication every Thursday during the year; and it ever since has been so published every Thursday, with the one exception of the last Thursday in December, 1960.

It is relator's contention that the one failure to publish the Courier during every week of its existence and its prompt return to unbroken publication each week did not, within the meaning and intent of § 493.050, destroy its status as a weekly newspaper possessing the qualifications theretofore vested in it under said section; that the action of the respondent judge in denying the administrator the right given him under § 472.100, par. 2, subpar. (2), to designate the Courier as the newspaper in which the notice here involved should be published is arbitrary and unreasonable and deprives him of the statutory right vested in him to designate any newspaper possessing the qualifications provided by § 493.050; and that the matter is of great public interest.

Respondents do not challenge the right of relator to seek mandamus in a proceeding such as this. Inasmuch as the facts are not in dispute and our preliminary writ was issued and the parties have pleaded the merits of the question, and an early determination of the issue presented is obviously in the public interest, we, in the exercise of our discretion, will rule the matter on the merits. State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9, 15 [10], [11].

The question is one of first impression in this State and we have been cited to no authority, nor has our search revealed any from other jurisdictions that sheds any appreciable light upon the subject. Consequently, we must turn to the statutes involved and construe them as we may find will effectuate their meaning and the purpose they seek to serve. The only provision of § 493.050 in question is that clause requiring that the paper "shall have been published regularly and consecutively for a period of three years; * * *."

Section 473.033, quoted supra, in specific terms provides that notice of letters of administration shall be published once a week for four consecutive weeks; § 493.050, quoted supra, likewise provides that when a public notice, required to be published once a week for a given number of weeks, shall be published in a daily,[1] triweekly, semiweekly or weekly newspaper, the notice shall appear once a week, on the same day of each week. It would seem clear that once publication of such a notice was begun in a legally qualified weekly newspaper, failure to publish the newspaper during the four consecutive weeks, on the same day of each week, would invalidate any publication theretofore begun but which had not been completed prior to the week of non-publication. It is further obvious, however, that such a publication could be begun anew and completed in accordance with the provisions of § 473.033, supra.

The problem with which we are essentially concerned may be thus stated: did the Courier, which prior to the last week in December, 1960, was admittedly fully qualified

---

1. Section 493.045 (Laws 1951, p. 532), not here directly involved, provides: "As used in this chapter the words 'daily newspaper' shall mean a newspaper which is published every day, or each day except Sundays and legal holidays, or which shall be published on each of any five days in every week excepting legal holidays and including or excluding Sundays; except, that when a holiday intervenes in any given week the newspaper may be published on each of any four days in said week."

under the provisions of § 493.050 to publish legal notices, become disqualified by reason of non-publication during that week?

■ This court, en banc, has said: "We may not capriciously ignore the plain language of the statute but in determining what the language really means we may consider the entire purpose and policy of the statute and 'the language in the totality of the enactment' and construe it in the light of 'what is below the surface of the words and yet fairly a part of them.'" State ex inf. Kamp, etc., v. Pretended Consolidated School Dist. No. 1 of Montgomery County, 359 Mo. 639, 223 S.W.2d 484, 488. See also 82 C.J.S. Statutes § 311, p. 526.

The facts in Drabinski v. Brown, 296 Mich. 463, 296 N.W. 538, are somewhat analogous to the situation here presented. In that case, the law required that publication of notice of tax sales should be made in regularly established newspapers having been *printed,* published and circulated in the county more than one year. A suit was brought to require vacation of the designation of the North Muskegon News as a newspaper qualified for the publication of such notices. The facts showed that said newspaper had for many years been a regularly established newspaper printed, published and circulated in the county, excepting that for a period of time the actual *printing* of the newspaper had been performed in another county. The court stated the question to be whether the statutory provisions required a continuity of the act of actual printing in addition to publication and circulation of the newspaper in order to qualify it as a medium for the purpose of legal notices. The holding was that the evidence showed only a temporary suspension of the printing of the paper in the county and that, under the circumstances, there was a substantial and sufficient compliance with the statutory requirements. In discussing its reason for so holding, 296 N.W., loc. cit. 540 [4, 5], the court said:

"The main purpose of the publication of legal notices is to give notice. The intent of the legislature in making provision for the giving of such notice is easily determined from a reading of the statutory provision noted above, and is this: that the legal notice required to be published shall be in a regularly established newspaper which is regularly printed and published and has a regular circulation in the county, thus preventing the publication of legal notices in newspapers of limited circulation established solely for the purpose of publishing such notices." See also Elliott v. Board of Supervisors, 182 Miss. 631, 179 So. 344, 180 So. 72; 66 C.J.S. Newspapers § 9, p. 33.

Prior to 1937 the law of Missouri (Laws 1931, p. 303) provided that such newspapers be published regularly and consecutively for a period of only one year. In 1937 the period was changed to require a period of three years. We think it may be reasonably deduced that the primary and basic purpose of the act is to require publication in a "going", regularly published and well established newspaper. This, upon the theory that, by reason of long establishment of the newspaper in which it is published, the notice will be more likely to come to the attention of a greater number of citizens of the county.

Assuming, by way of argument, that the suspension of publication of a newspaper is shown to be due solely to causes beyond control of the publisher [2] and is of such short and temporary duration as not seriously to affect the substantiality of the newspaper as a "going" newspaper during the period of years fixed by law, we think that, despite the rigidity of the express wording of the statute, any court would be reluctant to hold that the suspension required annulment of the rights theretofore vested in the publisher within the fair meaning and purposes of § 493.050. To so construe the statute could serve no wholesome purpose and conceivably could cause great hardship. On the other hand, we think that the statute

2. Such as those due to the elements, breakdowns, strikes, etc.

may not be reasonably construed to give to a publisher the unqualified privilege of voluntarily suspending publication for the purpose of recreation, even for a short period of time. (If one publisher may determine that a vacation of one week is desirable, may not another determine that a vacation of two, three or more weeks is desirable?)

 The facts result in the court being ultimately confronted with this situation: It has become a custom and practice of numerous small weekly newspapers in this State to suspend publication for one week to allow the publisher or publishers to have a vacation; the publishers of the Courier, in reliance upon that custom, suspended publication for one week for that purpose; and, when the validity of the suspension was questioned, they immediately abandoned the idea. Under these circumstances, we can see no justification in ruling that, absent a charge and proof that the suspension of publication for one week so materially reduced the efficacy of the Courier as a medium of imparting legal notices as to contravene the purpose of § 493.050, it should be deprived of its long established legal right to publish such notices. Moreover, we must bear in mind that grave questions could arise seriously affecting the status and property rights of persons whose status and rights depended upon the validity of publications made in an appreciable number of small newspapers heretofore published in accordance with the custom here shown.

The question of the effect of a temporary suspension of publication of any newspaper priorly qualified to publish legal notices should rest upon its own facts; and, when its legal qualifications are thus challenged, the matter ordinarily should be tried and decided in a direct proceeding brought in the trial court for the purpose of obtaining an express adjudication of that issue.

We are constrained to hold that under the facts here shown the Courier should not be held to have forfeited the right thereto-

fore vested in it to publish legal notices by the statutes herein discussed.

The alternative writ in mandamus heretofore issued is made peremptory.

All concur.