828 P.2d 848

**In the Matter of Application for PERMIT NO. 36–7200 IN THE NAME OF THE IDAHO DEPARTMENT OF PARKS AND RECREATION.**

**RIM VIEW TROUT COMPANY, Appellant–Respondent on Appeal–Cross–Appellant,**

**v.**

**R. Keith HIGGINSON, Director of the Idaho Department of Water Resources, Respondent–Appellant on Appeal–Cross–Respondent,**

**and**

**The Idaho Department of Parks and Recreation, Respondent.**

**No. 18785.**

Supreme Court of Idaho, Boise, December 1991 Term.

March 20, 1992.

---

4. Brown's claim would likely be unavailing in any event because the 200 rate was set by the same notice process.

Larry EchoHawk, Idaho Atty. Gen., Phillip J. Rassier, Deputy Atty. Gen., Boise, for appellant Higginson. Phillip J. Rassier argued.

Larry EchoHawk, Idaho Atty. Gen., Rinda R. Just, Deputy Atty. Gen., Boise, for appellant Dept. of Parks and Recreation. Rinda R. Just argued.

Ringert, Clark Chtd, Boise, for respondent Rim View Trout Co. William F. Ringert argued.

BOYLE, Justice.

In this water rights case we are called upon to interpret and apply the provisions of I.C. § 67–4308. We agree with the district court that the language of the statute is clear and unambiguous, and we therefore affirm the order of the district court reversing the decision of Idaho Department of Water Resources.

### I.

Niagara Springs is located in the Snake River Canyon between the towns of Twin Falls and Bliss. In 1971 the legislature passed a bill, now codified at I.C. § 67–4308, that permits the Idaho Department of Parks & Recreation (IDPR) to appropriate a portion of the waters of Niagara Springs in trust for the citizens of the state. In its entirety this section states:

> **Appropriation of waters in trust for people.**—The park and recreation board is hereby authorized and directed to appropriate in trust for the people of the state of Idaho the unappropriated *natural spring flow arising upon* the area described as follows, to-wit:
>
> That portion of lot one (1), of section ten (10), and lot three (3), of section eleven (11), township nine (9) south, range fifteen (15) east of the Boise Meridian, which is locally known as the Niagra Springs and *limited to that portion of Niagra*[1] *Springs upstream from the present existing diversions to the headwaters of the springs.*
>
> The preservation of water in the area described for its scenic beauty and recreational purposes necessary and desirable for all citizens of the state of Idaho is hereby declared to be a beneficial use of such water.
>
> No fee shall be required in connection with said appropriation by the park and recreation board or the permit issued in connection therewith, but license shall issue at any time upon proof of beneficial use to which said waters are now dedicated.
>
> The park and recreation board, or its successor, shall be deemed to be the holder of such permit, in trust for the people of the state, and the public use of the waters in the specific area herein described is declared to be of greater priority than any other use except that of domestic consumption.

(emphasis added).

At the time I.C. § 67–4308 was passed, six diversions of water existed. Beginning with the diversion closest to the headwaters of the spring, these consist of three small pipeline diversions which divert less than one cubic foot per second (cfs) of

---

1. The statute spells the word "Niagara" incorrectly according to its commonly accepted spelling.

water each. The fourth diversion is more substantial and is owned by the Idaho Department of Fish & Game. The fifth diversion is owned by Rim View Trout Company (Rim View), which is used to provide water to its fish hatchery. The sixth and final diversion is owned by Idaho Power to supply its steelhead trout hatchery, operated as mitigation for its hydro-development in Hells Canyon.

On July 12, 1971, shortly after I.C. § 67–4308 was passed, IDPR filed its application to appropriate water with the Idaho Department of Water Resources (IDWR).[2] As amended, the application seeks to appropriate water in the amount of 264 cfs. This application is intended to appropriate the remainder of the water not already appropriated so that it cannot be used commercially. The application was protested by Rim View, which has a junior application to divert an additional 115 cfs of water for commercial use. IDWR granted the application to IDPR, subject to certain conditions. IDWR found that the statute was ambiguous which required the use of various rules of construction to ascertain the legislature's intent. IDWR's decision was appealed to the district court which reversed the director's decision based on a finding that the statute unambiguously described the appropriation area as the area from the highest diversion to the headwaters of the springs.

IDWR and IDPR both appeal the decision of the district court. Rim View cross-appeals additional claims it made before the district court which were not addressed due to the district court's disposition of the case. We affirm the decision of the district court.

## II.

■■■ Because this case is an appeal of an administrative determination, our inquiry is independent of the district court's appellate decision. *Ferguson v. Board of County Com'rs,* 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986); *First Interstate*

Bank of Idaho v. West, 107 Idaho 851, 693 P.2d 1053 (1984). When reviewing an administrative determination we do not substitute our judgment for that of the agency as to the weight of the evidence on questions of fact. I.C. § 67–5215(g). However, we may reverse or modify an agency decision if it is in violation of constitutional or statutory provisions; is in excess of the statutory authority of the agency; is made upon unlawful procedure; is affected by other error of law; is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. I.C. § 67–5215(g).

## III.

The fundamental issue in this litigation is the interpretation of I.C. § 67–4308, particularly the description of the natural spring flow to be appropriated by IDPR. The disputed language defines IDPR's statutory application right as "limited to that portion of Niagra Springs upstream from the presently existing diversions to the headwaters of the springs." I.C. § 67–4308.

■■■ The agencies argue that the statute is ambiguous and thereby seek to engage us in the application of various rules of construction in order to determine legislative intent. It is a basic rule of statutory construction that, unless the result is palpably absurd, we must assume that the legislature means what is clearly stated in the statute. *Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991); *Miller v. State,* 110 Idaho 298, 715 P.2d 968 (1986); *State Dep't of Law Enforcement v. One 1955 Willys Jeep,* 100 Idaho 150, 595 P.2d 299 (1979). It is also well established that statutes must be interpreted to mean what the legislature intended the statute to mean, *Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991); *Miller v. State,* 110 Idaho 298, 715 P.2d 968 (1986);

---

**2.** The record does not disclose the reason why this proceeding has taken twenty years to reach this Court.

*Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), and the statute must be construed as a whole. *Sherwood v. Carter*, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991); *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983); *Sherwood & Roberts Inc. v. Riplinger*, 103 Idaho 535, 650 P.2d 677 (1982). Statutory interpretation always begins with an examination of the literal words of the statute. *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 586 P.2d 1346 (1978). In so doing, every word, clause and sentence should be given effect, if possible. *Wright v. Willer*, 111 Idaho 474, 725 P.2d 179 (1986); *University of Utah Hosp. & Medical Center v. Bethke*, 101 Idaho 245, 611 P.2d 1030 (1980). The clearly expressed intent of the legislature must be given effect and there is no occasion for construction where the language of a statute is unambiguous. *Sherwood v. Carter*, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991); *Ottesen ex rel. Edwards v. Board of Comr's of Madison County*, 107 Idaho 1099, 695 P.2d 1238 (1985). Finally, when construing a statute, its words must be given their plain, usual and ordinary meaning. *Sherwood v. Carter*, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991); *Walker v. Hensley Trucking*, 107 Idaho 572, 691 P.2d 1187 (1984).

Applying these rules of statutory interpretation we hold that the district court was correct in concluding that the plain language of I.C. § 67–4308 specifies that the "terminus of the instream right is upstream from the highest diversion." An analysis of I.C. § 67–4308 explains the statute's clear and unambiguous meaning. The first clause of I.C. § 67–4308 indicates that the area to be appropriated is "the natural spring flow arising upon" a specific area. The statute then gives a legal description of the general area known as Niagara Springs. This general area is modified by the words "limited to" followed by the specific appropriation area defined as "that portion of Niagara Springs upstream from the present existing diversions to the headwaters of the springs." The district court found this phrase synonymous with the phrase "upstream from the highest di-

version existing when H.B. 69 was enacted in 1971" to the headwaters of the springs. We agree. By giving the words "upstream from the present existing diversions" contained in I.C. § 67–4308 "their plain, usual and ordinary meaning," *Sherwood v. Carter*, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991), they could only mean the area upstream from the highest diversion. Accordingly, we hold that I.C. § 67–4308 is clear and unambiguous in defining the area of appropriation as the portion of the natural springs upstream from the highest existing diversion to the headwaters of the springs at the time the statute was enacted in 1971.

Nevertheless, IDWR and IDPR argue that I.C. § 67–4308 is ambiguous. IDWR proffers an alternate interpretation of the statute which they argue demonstrates an ambiguity in the statute. IDPR adds that because the parties have been disputing the statute's meaning for over nineteen years and have proposed numerous possible interpretations for the terminus of the IDPR's appropriation authority, the statute must be ambiguous. However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous. As the district court stated:

> ... a statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.
>
> The plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.
>
> [The] Rule of construction to consider object and purpose has no place when words of [the] act leave no doubt.

*John Hancock Mutual Life Ins. Co. v. Haworth*, 68 Idaho 185, 192, 191 P.2d 359 (1948).

Therefore, the possible interpretations offered by IDWR and IDPR do not demon-

strate that the statute is ambiguous as contemplated by our cases.

IDWR and IDPR also argue that if the interpretation of the district court is upheld it will defeat the legislature's intent when it enacted the statute. They argue that the purpose of I.C. § 67–4308 was to preserve the scenic beauty of the Niagara Springs area and that unless the statute is read as protecting the *creek* which flows from the springs the legislator's intent will be defeated. However, this argument is misplaced because the best guide to legislative intent is the words of the statute itself. By its own words I.C. § 67–4308 was meant to preserve the "natural springs" within a specifically defined area. Obviously, the headwaters of the springs and the short distance to the first diversion are protected under clear wording of the statute. The statute does not indicate that the *instream* flow of the creek was subject to appropriation by IDPR but only a limited portion of "the natural spring flow *arising upon*" a specified area. Because that area is protected by I.C. § 67–4308, the purpose of the statute will be given effect if its clear words are carried out.

 While the plain words of the statute defy the agencies' concern over the purpose of the statute, the purpose of an unambiguous statute is not the concern of the courts when attempting to interpret a statute. This Court has stated that when the language of a statute is definite, courts must give effect to that meaning whether or not the legislature anticipated the statute's result. *Unity Light & Power Co. v. Burley*, 83 Idaho 285, 361 P.2d 788 (1961). Moreover, "[t]he wisdom, justice, policy, or expediency of a statute are questions for the Legislature alone. . . . It is the duty of the courts to interpret the meaning of legislative enactments without regard to the possible results." *Berry v. Koehler*, 84 Idaho 170, 369 P.2d 1010 (1962).

 Finally, IDWR argues that it is entitled to judicial deference in its statutory interpretation. However, because the agency's statutory interpretation contradicts the clear and unambiguous expression of the legislature, under the third prong of the test articulated in *Simplot v. Idaho State Tax Comm'n*, 120 Idaho 849, 820 P.2d 1206 (1991), IDWR is not entitled to judicial deference.

## IV.

 Rim View argues that under I.C. § 12–117, it should be entitled to attorney fees against IDPR for its costs throughout this litigation and against IDWR for its costs on appeal. However, we do not deem the proffered interpretations of I.C. § 67–4308 to be the result of "groundless or arbitrary agency action." *Bogner v. State Dep't of Revenue & Taxation*, 107 Idaho 854, 693 P.2d 1056 (1984). Moreover, Rim View has not been subjected to "unfair and unjustified financial burdens defending against groundless charges" which should never have been made. *Id.* Accordingly, Rim View's request for attorney fees is denied.

## V.

### Summary

Because of our disposition of this case, it is unnecessary to consider the remainder of Rim View's arguments on cross-appeal. The holding of the district court reversing the determination of the Idaho Department of Water Resources is affirmed.

Costs to respondent. No fees awarded on appeal.

BISTLINE, J., HURLBUTT, District Judge Pro Tem. and GOFF, District Judge Pro Tem. concur.

McDEVITT, J. concurs in result.