3 P.3d 1254

**POISON CREEK PUBLISHING, INC., an Idaho corporation, dba The Long Valley Advocate, Plaintiff–Respondent,**

v.

**CENTRAL IDAHO PUBLISHING, INC., an Idaho corporation, dba The Star News, Defendant–Appellant.**

No. 25618.

Court of Appeals of Idaho.

June 19, 2000.

428

Givens Pursley, LLC, Boise, for appellant. Debora K. Kristensen argued.

Michael G. Pierce, Cascade, for respondent.

SCHWARTZMAN, Judge.

Central Idaho Publishing, Inc. (the Star News) appeals from the district court's grant of summary judgment to Poison Creek Publishing, Inc., dba The Long Valley Advocate (the LVA). The Star News claims that the district court erred by concluding that the LVA was only required to substantially, rather than strictly, comply with the I.C. § 60–106 qualifications for newspapers printing legal notices. We agree and reverse.

## I.

### FACTS AND PROCEDURE

The LVA and the Star News are weekly newspapers published in Cascade, Idaho and McCall, Idaho respectively. The LVA began regular weekly publication in November of 1985 and publishes on Wednesdays. However, during the last week of December in the years 1996–1998, the LVA did not publish its weekly edition because the owners/operators voluntarily ceased publication to take a vacation.

In the early part of 1999, the City of Donnelly notified the LVA that it would no longer publish its legal notices in the LVA, but instead would do so in the Star News because the city was concerned about the LVA's qualification to publish legal notices under I.C. § 60–106. Idaho Code § 60–106 mandates that newspapers, in order to quali-fy for the publishing of legal notices, must have published a weekly edition every week for seventy-eight consecutive weeks prior to the first publication of the notice. Other governmental entities, including the City of Cascade, also discontinued publishing their legal notices in the LVA. None of these facts are in dispute on appeal.

On March 17, 1999, the LVA filed a complaint for a declaratory judgment concerning its qualification for publication of legal notices under I.C. § 60–106, and named the Star News as a defendant. The Star News filed its answer and thereafter both parties filed a motion for judgment on the pleadings. A hearing was held and the district court, with the parties' consent, treated the matter as cross motions for summary judgment. The district court issued its memorandum decision and order granting summary judgment to the LVA. The Star News appeals.

## II.

## THE DISTRICT COURT ERRED BY NOT REQUIRING THE LONG VALLEY ADVOCATE TO STRICTLY COMPLY WITH I.C. § 60–106

### A. Standard of Review

■ There were no issues of fact contested below, and the issue on appeal involves the interpretation and application of I.C. § 60–106. Because the construction and application of a legislative act presents a pure question of law, we exercise free review. *Fox v. State,* 129 Idaho 881, 883, 934 P.2d 947, 949 (Ct.App.1997).

### B. Idaho Code § 60–106

Idaho Code § 60–106 provides in relevant part:

No legal notice, advertisement or publication of any kind required or provided by the laws of the state of Idaho, to be published in a newspaper, shall be published or have any force or effect, as such, unless the same be published in a newspaper of general interest published in the state of Idaho, and which newspaper if published weekly, has been *continuously and uninterruptedly published in the county during*

a period of seventy-eight (78) consecutive weeks prior to the first publication of the notice ...; provided, that nothing in this chapter shall invalidate the publication of such notice or advertisement in any newspaper which has simply changed its name, frequency of publication, suspended publication because of an act of God, or public enemy, fire, strike, or other labor dispute, explosion, flood, government prohibition, government requisition of essential property, preferential government orders, breakdown, legal acts of public authorities or other acts beyond the control of the publisher for a period not to exceed six (6) months.

(Emphasis added.)

### C. Rules of Statutory Interpretation

■ The cardinal rule of statutory construction is that where a statute is plain, clear and unambiguous, we are constrained to follow that plain meaning and neither add to the statute nor take away by judicial construction. *Moon v. Investment Board,* 97 Idaho 595, 596, 548 P.2d 861, 862 (1976). Statutory interpretation always begins with an examination of the literal words of the statute. *In re Permit No. 36–7200,* 121 Idaho 819, 822, 828 P.2d 848, 851 (1992). Unless the result is palpably absurd, we must assume that the legislature means what is clearly stated in the statute. *Id.* We must give the words their plain, usual and ordinary meaning, and there is no occasion for construction where the language of a statute is unambiguous. *Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991). We furthermore must give every word, clause and sentence effect, if possible. *In re Permit No. 36–7200,* 121 Idaho at 822, 828 P.2d at 851.

■ Idaho has also recognized that "where a constitution or statute specifies certain things, the designation of such things excludes all others." *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978). This rule of interpretation is often referred to as *expressio unius est exclusio alterius.*

### D. Analysis

■ The district court stated in its memorandum decision that the "appropriate test is whether the [Long Valley] Advocate has complied with the requirement of the continuous-publication statute substantially enough to have it continue to qualify as the type of newspaper in which legal notices and advertisements are 'likely to come to the attention' of citizens in the community." Citing to several Idaho cases for the proposition that Idaho courts often allow substantial compliance with applicable statutes, rather than strict compliance, the district court concluded that the LVA "substantially complied" with I.C. § 60–106 such that it "has not ceased to qualify as a newspaper suitable for publishing legal notices." However, none of those cases concern statutes setting forth mandatory deadlines or definite timeframes.[1]

The rules of statutory construction dictate a different result. Idaho Code § 60–106 requires that a newspaper be "continuously and uninterruptedly published in the county during a period of seventy-eight (78) consecutive weeks prior to the first publication of the notice." This clear language mandates that a weekly newspaper publish its weekly edition continuously and uninterruptedly for seventy-eight consecutive weeks. Enforcement of this provision does not lead to palpably absurd results, therefore we must assume that the legislature meant what is plainly written in the statute.

The district court also cited two similar cases that held substantial compliance with a frequency of publication statutory requirement to be sufficient, namely *Williams v. Athens Newspapers, Inc.,* 241 Ga. 274, 244 S.E.2d 822 (1978) and *State v. Proctor,* 361 S.W.2d 802 (Mo.1962). We find, however, these cases to be distinguishable or otherwise unpersuasive.

---

1. The district court cited *Barber v. Honorof,* 116 Idaho 767, 780 P.2d 89 (1989); *Matter of New Concept Realty & Development, Inc.,* 107 Idaho 711, 692 P.2d 355 (1984); *Carlson v. Estate of Carlson,* 93 Idaho 258, 460 P.2d 393 (1969); *State v. Walker,* 107 Idaho 308, 688 P.2d 1213 (Ct.App.1984); and *State v. Kasio,* 106 Idaho 851, 683 P.2d 887 (Ct.App.1984).

*Williams* involved the same factual scenario as the present case, with one important distinction. The Georgia statute did not require that the previous term of publication be for consecutive weeks. The Supreme Court of Georgia concluded that the trial court was correct in finding that the subject newspaper satisfied the requirements of the relevant statute because "if the General Assembly had intended to require publication of the county's legal organ for consecutive weeks during the two-year period, the General Assembly would have said so." 244 S.E.2d at 824. "Consecutive" is precisely the language chosen by the Idaho legislature in drafting I.C. § 60–106.

In *Proctor*, the Supreme Court of Missouri was faced with the identical issue. The Clarence Courier was a weekly newspaper in Missouri that suspended publication for one week each Christmas so its employees could take a vacation. The relevant Missouri statute provided that the paper had to be "published regularly and consecutively for a period of three years." *Proctor*, 361 S.W.2d at 804. In deciding that the Clarence Courier did not lose its qualifications as a paper capable of publishing legal notices, the Court stated:

> Assuming, by way of argument, that the suspension of publication of a newspaper is shown to be due solely to causes beyond control of the publisher and is of such short and temporary duration as not seriously to affect the substantiality of the newspaper as a "going" newspaper during the period of years fixed by law, we think that, despite the rigidity of the express wording of the statute, any court would be reluctant to hold that the suspension required annulment of the rights theretofore vested in the publisher.... On the other hand, we think that the statute may not be reasonably construed to give to a publisher the unqualified privilege of voluntarily suspending publication for the purpose of recreation, even for a short period of time. (If one publisher may determine that a vacation of one week is desirable, may not another determine that a vacation of two, three or more weeks is desirable?)

*Id.* at 805–06. The Court nevertheless found that the Clarence Courier retained its ability to publish legal notices because it had "become a custom and practice of numerous small weekly newspapers in [Missouri] to suspend publication for one week to allow the publisher or publishers to have a vacation." *Id.* at 806.

In contrast, I.C. § 60–106 specifically provides a number of exceptions to its publication requirement, including strike or other labor dispute, breakdown, legal acts of public authorities or other acts beyond the control of the publisher. No reference is made to traditional holidays or customary vacations. When a statute specifies which areas are to be encompassed in its enforcement, it is generally accepted that those areas not mentioned are not to be included; *expressio unius est exclusio alterius*. *Hewson v. Asker's Thrift Shop*, 120 Idaho 164, 167, 814 P.2d 424, 427 (1991). By providing no less than twelve individual exceptions to the continuous publication requirement, the Idaho legislature impliedly excluded all other reasons for temporary suspension of publication. This would seem to allay many of the fears expressed by the Supreme Court of Missouri in *Proctor*. Additionally, the *Proctor* Court specifically expressed reservation about publishers suspending publication for the purpose of recreation, even for a short period of time, but nevertheless allowed local custom and practice to win out. Here, there has been no showing of any statewide or regional custom or common practice of temporarily suspending publication during Christmas week.

■ The LVA claims that "if this Court were to adopt the position urged by the Star News, the results would be disastrous," because all of the legal notices published in the LVA from January 1997 until the present time "would be subject to collateral attack." While our decision may cause some cases to be reevaluated, "[t]he wisdom, justice, policy, or expediency of a statute are questions for the Legislature alone.... It is the duty of the courts to interpret the meaning of legislative enactments without regard to the pos-

sible results." [2] *In re Permit No. 36–7200,* 121 Idaho at 824, 828 P.2d at 853.

We hold that the requirements of I.C. § 60–106 are clear and unambiguous, and we are constrained to enforce the statute as written. If we were to ignore the plain language of this statute, then henceforth, no clear and unambiguous statute would be safe from a "substantial compliance" interpretation.

## III.

### IDAHO CODE § 60–106's EXCEPTION FOR NEWSPAPERS THAT CHANGE THEIR "FREQUENCY OF PUBLICATION" IS NOT APPLICABLE TO THE LVA's DECISION TO TAKE A VACATION ONE WEEK A YEAR

 Idaho Code § 60–106 provides exceptions to the continuous publication requirement for a newspaper that has:

> simply changed its name, frequency of publication, suspended publication because of an act of God, or public enemy, fire, strike, or other labor dispute, explosion, flood, government prohibition, government requisition of essential property, preferential government orders, breakdown, legal acts of public authorities or other acts beyond the control of the publisher for a period not to exceed six (6) months.

The LVA claims that its voluntary decision to cease publication one week a year amounts to a decision to change its "frequency of publication" and thus does not affect its qualification for publication of legal notices. We disagree.

The plain and usual meaning of the phrase "frequency of publication," when taken in context of a statute concerning daily and weekly newspapers, refers to a newspaper's decision to alter its normal course of publication, i.e. a daily newspaper choosing to become a weekly newspaper or vice versa. The clear intent of Idaho Code § 60–106 in this regard is that such a newspaper not have its qualification for publication of legal notices affected.

 The rules of statutory construction require that all words and phrases of a statute be given effect where possible. If we were to accept the LVA's interpretation of the "frequency of publication" exception, the seventy-eight-week continuous publication requirement would have diminished legal effect. A newspaper would be free each week to decide to change its "frequency of publication" by not publishing an issue—the exception thus swallowing the rule. However, our reading gives effect to the seventy-eight-week continuous publication requirement because *such is not inconsistent with a newspaper deciding to switch from a daily to a weekly publication schedule or vice versa;* such newspapers would continue to meet the seventy-eight-week continuous publication requirement.

## IV.

### CONCLUSION

Because we conclude that the language of I.C. § 60–106 is clear and unambiguous concerning what it mandates from newspapers wishing to qualify for the printing of legal notices, the district court's grant of summary judgment to the LVA is reversed.[3] We further conclude that this statute's "frequency of publication" exception does not encompass a voluntary decision by a weekly newspaper to interrupt its ordinary course of publication for one week so that employees can take a vacation.

---

2. We express absolutely no opinion on the effect that this decision may have on legal notices published in the LVA during the time of its noncompliance with I.C. § 60–106.

3. The LVA claims that this issue will be moot in June of 2000 because it will once again be in compliance with I.C. § 60–106 and will no longer be taking vacations at Christmas. However, there is no guarantee that the LVA will hereafter conform its future publication to satisfy the requirements of I.C. § 60–106. Therefore, we do not view this case as moot.

Accordingly, we remand the case to the district court to enter summary judgment in favor of the Star News and against the LVA. Costs are awarded to the Star News.

Judge LANSING and Judge Pro Tem MORFITT concur.