17 P.3d 883

**Mila Jean WILDER, a single woman, Plaintiff–Respondent,**

v.

**Russell R. MILLER and Averal Miller, husband and wife, Defendants– Appellants,**

**and**

**Joseph R. Cirafisi, a single man, and Sandpoint Title Insurance, Inc., an Idaho corporation, Defendants–Respondents.**

No. 25664.

Court of Appeals of Idaho.

Dec. 11, 2000.

Rehearing Denied Jan. 17, 2001.

Review Denied Feb. 8, 2001.

---

384

Thomas M. Smith, Spokane, WA, for appellant.

Fred R. Palmer, Sandpoint, for respondent, Wilder.

Joseph R. Cirafisi, Jacksonville, FL, respondent, not appearing.

SCHWARTZMAN, J.

Russell R. Miller and Averal Miller (the Millers) appeal from the district court's judgment quieting title to a parcel of land, referred to as the Comeback Bay lot, in favor of Mila Jean Wilder.

## I.

## FACTS AND PROCEDURE

Joseph R. Cirafisi is the son of Averal Miller, the stepson of Russell Miller and former boyfriend of Wilder. In 1980, Cirafisi purchased the Comeback Bay lot. In 1985, Cirafisi delivered a deed of trust conveying the Comeback Bay lot to two persons, Susan Sorentino and Peter Smith. In 1987, Cirafisi delivered a quitclaim deed for the same parcel to the Millers; this deed was not recorded. The district court found that in delivering the quitclaim deed, Cirafisi intended the property to act as security for prior loans he had taken from the Millers. At the time the quitclaim deed was delivered to the Millers, Cirafisi owed them just over $5,000. In 1988, Sorentino and Smith reconveyed their interest in the lot back to Cirafisi through a warranty deed.

In July of 1990, Wilder was injured in an incident involving Cirafisi and filed a personal injury suit against him seeking damages. Trial was eventually set to begin in September of 1992. In July of 1992, the Millers and Cirafisi met with Cirafisi's attorney to discuss the merits of Wilder's claim. At this time, record title to the lot remained in Cirafisi and he was paying property taxes on the parcel. Cirafisi's counsel advised the Millers to not record their quitclaim deed and instructed Cirafisi to execute two promissory notes and deeds of trust. One was made out to Cirafisi's counsel to secure payment of his fees and the other was made to the Millers (the deed of trust) in the amount of $23,151—the accumulated value of the antecedent debt built up over the years owed by Cirafisi to the Millers—in order to secure payment of Cirafisi's indebtedness.[1] Cirafisi executed and recorded the two deeds of trust on August 20, 1992—two weeks prior to the scheduled trial. The 1987 quitclaim deed remained unrecorded. The district court found that the Millers' deed of trust was clearly intended as a "mechanism for preventing Wilder from foreclosing any judgment."

At the conclusion of the personal injury trial, Wilder obtained an $11,653.36 judgment against Cirafisi. This judgment and judgment lien were recorded on September 8, 1992, thus becoming a lien against the property. Wilder attempted to execute upon the judgment, but Cirafisi had no personal assets from which the judgment could be satisfied. Wilder deposed the Millers in March of 1993 and learned that the Comeback Bay lot had been quitclaim deeded in 1987 to the Millers by Cirafisi. This quitclaim deed was not recorded until March 3, 1993, only two days prior to Wilder's deposition of the Millers. The Millers admitted that this was done because they were fearful of the effects of Wilder's judgment against Cirafisi. Wilder

1. The parties believed that the Comeback Bay lot was now worth approximately $25,000.

obtained a writ of execution against the property on August 11, 1995, and thereafter received a sheriff's deed to the Comeback Bay lot. Notice of the sheriff's sale was provided to the Millers. Wilder entered the high "credit" bid of $18,459.57 and then sought to quiet title to the parcel in her favor.

Following a one-day bench trial, the district court entered its findings of fact and conclusions of law on May 21, 1999, concluding that the quitclaim deed and the deed of trust were fraudulent transfers against Wilder's interest. The court ordered title quieted in favor of Wilder. Wilder was also awarded her attorney fees in a later amended judgment. The Millers appeal. We affirm.

## II.

## THE QUITCLAIM DEED WAS A FRAUDULENT TRANSFER AS TO A PRESENT CREDITOR UNDER I.C. § 55-914(2)

### A. Standard of Review

The district court's findings of fact will not be disturbed if they are supported by substantial and competent evidence. *Bouten Const. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999). However, conclusions of law based on these findings are freely reviewed on appeal. *Id.* The construction and application of a statute or statutes present pure questions of law, and therefore are also freely reviewed. *Poison Creek Publishing, Inc. v. Central Idaho Publishing, Inc.*, 134 Idaho 426, 428, 3 P.3d 1254, 1256 (Ct.App.2000).

### B. Relevant Idaho Code Sections

Idaho Code § 55-914(2) provides:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

This section served as the basis for the district court's ruling below. Therefore, each element listed above must be satisfied.

However, this Court must first determine when the transfer of the Comeback Bay lot is considered to have occurred. The Millers argue that the transfer occurred in 1987 at the time Cirafisi executed and delivered the quitclaim deed to them, prior to the time Wilder's claim against Cirafisi arose. Wilder asserts to the contrary that I.C. § 55-915 controls the timing of the transfer. Idaho Code § 55-915(1)(a) provides that for the purposes of unlawful transfers:

[a] transfer is made with respect to an asset that is real property ... when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

This statute provides that a transfer will not be deemed to have occurred, at least as to outside third parties, until it is recorded. This is in direct accord with I.C. § 55-606—Idaho's race-notice statute, which provides that a bona fide purchaser of real property who records his or her deed first has good title as to a prior transferee who failed to record his or her conveyance.

### C. Analysis

The baseline rule of statutory interpretation is that where the language of the statute is plain and unambiguous, we are constrained to follow its plain meaning. *Poison Creek*, 134 Idaho at 429, 3 P.3d at 1257. "Unless the result is palpably absurd, we must assume that the legislature means what is clearly stated in the statute." *Id.*

In our view, the language of I.C. § 55-915(1)(a) is clear and unambiguous. By its plain language this section mandates that, for purposes of analyzing a fraudulent transfer, a transfer is deemed to have occurred when it is perfected to the point that a subsequent bona fide purchaser could not acquire an interest in the property superior to the transferee, i.e., the transfer is completed at the recording of the instrument or deed. *See Boardwalk Regency Corp. v. Burd*, 262 N.J.Super. 162, 620 A.2d 448, 449 (1993) (finding that the date the deed was recorded was the date of transfer).

We fully recognize that the quitclaim deed issued by Cirafisi to the Millers was executed and delivered in 1987, and that Wilder's claim of injury against Cirafisi did not arise until, at the earliest, 1990. It is therefore clear that Cirafisi did not execute and deliver the quitclaim deed to the Millers in 1987 with the intent to defraud Wilder. However, this does not change the language of I.C. § 55–915 and our directive to follow such language if clear and unambiguous and without palpably absurd results. *In re Permit No. 36–7200*, 121 Idaho 819, 824, 828 P.2d 848, 853 (1992). This result is not palpably absurd; it appears to merely effectuate a policy of encouraging transferees to record their real property instruments in a timely fashion or risk loss of their interest. It also prevents a debtor from benefiting from secret, unrecorded transfers of assets which enable the debtor to retain legal title and thereby misrepresent his or her financial status and mislead creditors. I.C. § 55–606. Accordingly, for purposes of applying I.C. § 55–914(2) to the facts of this case, we treat the date that the quitclaim deed was recorded as the date of transfer.

Applying I.C. § 55–914(2), the district court found that Wilder's claim[2] against Cirafisi arose before the quitclaim deed transfer was completed and before the 1992 deed of trust was executed in Cirafisi's attorney's office; the two deeds were issued to an "insider"—defined in I.C. § 55–910(7)(a) as "a relative of the debtor"; the two deed transfers were for an antecedent debt between Cirafisi and the Millers; Cirafisi was insolvent at these times; and the Millers had reasonable cause to believe that Cirafisi was insolvent at these times. Thus, the district court found that "the elements of establishing a fraudulent transfer under I.C. § 55–914(2)[had] been proven overwhelmingly." Because each of the above represent findings of fact below, they will not be disturbed on appeal unless clearly erroneous. *Bouten Const. Co.*, 133 Idaho at 760, 992 P.2d at 755.

However, instead of challenging the evidence supporting these factual findings, the Millers cite to I.C. § 55–901, which refers to real property instruments "made with intent to defraud," and argue that Cirafisi had no fraudulent intent in 1987 when the quitclaim deed was executed and delivered to them. While this is undeniably true, it remains that I.C. § 55–914(2) does not require that any fraudulent intent be present. *See Alcan Bldg. Products v. Peoples*, 124 Idaho 338, 340, 859 P.2d 374, 376 (Ct.App.1993) (stating that I.C. § 55–914(2) "does not focus on the intent of the debtor"); *Montana Ass'n. of Credit Management v. Hergert*, 181 Mont. 442, 450, 593 P.2d 1059, 1064 (Mont. 1979) (recognizing that the Uniform Fraudulent Conveyances Acts—a statute very similar to the Uniform Fraudulent Transfer Act applicable in Idaho—declares certain conveyances to be fraudulent regardless of the presence or absence of any actual intent to defraud); *Boardwalk Regency Corporation*, 620 A.2d at 449 (finding that fraudulent intent is not a part of the analysis of statutory fraud; notably, the relevant New Jersey statutes are nearly identical to their Idaho counterparts—I.C. §§ 55–914, 55–915); *First National Bank in Albuquerque v. Abraham*, 97 N.M. 288, 291, 639 P.2d 575, 578 (1982) (holding that under the Uniform Fraudulent Conveyance Act, "prejudice to the rights of creditors is presumed, regardless of the debtor's intent to defraud"). The district court specifically recognized as much in its findings of fact and conclusions of law.

The Millers have only challenged one of the factual findings supporting the district court's conclusion that the Comeback Bay lot was fraudulently transferred by Cirafisi to the Millers in violation of I.C. § 55–914(2). The Millers claim that the factual finding that Cirafisi was insolvent at the time of the transfers is clearly erroneous. Idaho Code § 55–911 defines "insolvency," for purposes of the Uniform Fraudulent Transfer Act, as being present when a debtor's debts are greater than all of the debtor's assets. Idaho Code § 55–911(2) specifically provides that "[a] debtor who is generally not paying his or her debts as they become due is

---

2. Idaho Code § 55–910(3) defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

# 387

presumed to be insolvent." At trial, the district court heard evidence that Cirafisi periodically lived with the Millers from 1989 to 1991, leaving on occasion to work abroad and storing his belongings with the Millers; the Millers were paying for Cirafisi's attorney in the personal injury action brought by Wilder; Cirafisi owed the Millers approximately $23,000 in 1992; the Millers kept records of how much money Cirafisi owed them; Cirafisi had not reimbursed the Millers as of the summer of 1992; and Cirafisi was without assets at this time. Furthermore, the trial exhibits included a letter from Cirafisi's attorney to the Millers purporting to give them "an opportunity to pay Mr. Cirafisi's obligation ... prior to the initiation of Trust Deed foreclosure proceedings" on the Comeback Bay lot.

We therefore conclude that there was substantial and competent evidence presented at trial to support the district court's factual finding that Cirafisi was insolvent at the time the quitclaim transfer was accomplished. The district court's remaining factual findings are not challenged on appeal and thus are not disturbed. The decision of the district court quieting title on the Comeback Bay lot in favor of Wilder is affirmed.[3]

## III.

## ATTORNEY FEES

The district court awarded Wilder her attorney fees below based upon I.C. § 12–121 because it felt that the Millers' "defense [had] been frivolously and unreasonably defended upon a fallacious contention." The Millers' only challenge to this award is based upon their anticipation of a reversal of the district court's judgment quieting title in Wilder's favor. Because we have affirmed this judgment, we decline to review the district court's award of attorney fees.

The Millers assert a claim for attorney fees on appeal, but cite no statutory basis for the claim and include no supporting argument. Where a party requesting attorney fees on appeal does not present argument with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied on, this Court will not address the claim. *See Carl H. Christensen Family Trust v. Christensen,* 133 Idaho 866, 874, 993 P.2d 1197, 1205 (1999), *citing Weaver v. Searle Bros.,* 131 Idaho 610, 616, 962 P.2d 381, 387 (1998). Accordingly, we decline to award attorney fees on appeal.

## IV.

## CONCLUSION

The district court's judgment quieting title to the Comeback Bay lot in favor of Wilder is affirmed. Wilder is awarded her costs on appeal but no attorney fees.

Chief Judge PERRY and Judge LANSING concur.

---

3. We do note that the Millers argue that the deed of trust executed and delivered to them by Cirafisi in 1992, shortly before the beginning of Wilder's case against Cirafisi, also provided them with an interest in the Comeback Bay lot. However, that deed of trust is clearly a fraudulent conveyance under I.C. § 55–914(2), because it is a transfer made to an insider for an antecedent debt, made after Wilder's claim arose and while Cirafisi was insolvent. Moreover, as stated herein, the district court specifically found that this deed of trust was nothing more than a "mechanism for preventing Wilder from foreclosing any judgment" on the Comeback Bay lot. Thus, unlike the 1987 quitclaim deed which could be said to have implicated no intent to defraud a creditor of Cirafisi, the 1992 deed of trust was the epitome of a fraudulent transfer because all parties concerned were aware of Wilder's pending action against Cirafisi. *See* 37 AM.JUR.2D *Fraudulent Conveyances* § 145 (general rule is that tort claimant may maintain action for fraudulent conveyance prior to obtaining judgment on underlying tort).