William L. Farr State Fire Marshal Department of Public Safety Division of Fire Safety 1709 Industrial Drive P.O. Box 844 Jefferson City, MO 65102-0844
Dear Mr. Farr:
You have submitted the following question to this office:
Does Section 701.359 RSMo 1994 exempt any political subdivision from conducting inspections based upon an ordinance or adopted code that is less stringent than the state adopted minimum safety standards?
In the information you submitted you have included documentation that your office and the city attorney of Kansas City have disagreed whether Kansas City is exempt from the provisions of Section 701.359 RSMo 1994.
Section 701.359 RSMo 1994 provides:
A political subdivision which has, on August 28, 1994, adopted the ANSI elevator codes specified in section 2 and maintains, and continues to maintain at all times, after enactment of sections 701.350 to 701.380, a duly constituted department, bureau, or division for the purposes of enforcing these codes, is exempt from the provisions of section 2, except insofar as the statute requires state certification of inspection or inspections by certified inspectors. Adoption of any code by a political subdivision or the establishment of any code pursuant to sections 701.350
to 701.380 does not preempt common law or statutory liability.
Confusion arises from the fact that there is no "section 2" of Section701.359 RSMo 1994 as enacted and codified. The provisions of H.B. 1035 enacted in 1994 are found at Sections 701.350-701.380 RSMo 1994, with the only change since 1994 found at Section 701.361 RSMo 1999 Supp., which is not relevant to our discussion herein. ANSI (American National Standards Institute) codes are referred in Section 701.335(2), Section 701.357(1), (2), (3), and (4), and Section 701.367.2 RSMo 1994.
Section 701.355 RSMo 1994 authorizes the elevator safety board, hereinafter the "board" to do a number of things, including, at subsection 2:
To adopt a code of rules and regulations governing construction, maintenance, testing and inspection of both new and existing installations. The board shall have the power to adopt a safety code only for those types of equipment defined in the rule. In promulgating the elevator safety code the board may consider any existing or future American National Standards Institute safety code affecting elevators as defined in sections 701.350 to 701.380, or any other nationally acceptable standard;
Section 701.357 RSMo 1994 provides:
Any code adopted pursuant to section 701.355 shall be equal to or more stringent than the standards provided for in the following:
(1) American Society of Mechanical Engineers Safety Code for Elevators and Escalators ANSI/ASME A17.1;
(2) American National Standard Practice for the Inspection of Elevators, Escalators and Moving Walks ANSI A17.2;
(3) American National Standard Safety Code for Manlifts ANSI A90.1; and
(4) American National Standard Safety Requirements for Personnel Hoist ANSI A10.4.
Section 701.367.2 RSMo 1994 provides:
The provisions of sections 701.350 to 701.380 shall not apply to materials handling equipment which complies with ANSI B20.1 STANDARD.
Principles of statutory construction should be utilized when trying to discern intent of the legislature. Sermchief v. Gonzales, 660 S.W.2d 683
(Mo. 1983). This is particularly true when there is an apparent ambiguity in a statute. State ex rel. Rogers v. Board of PoliceCommissioners of Kansas City, 995 S.W.2d 1 (Mo.App. 1999). However, when interpreting an ambiguous statute it is important to give words meaning within the context of the statute and the legislature's purpose in enacting the law. Sullivan v. Carlisle, 851 S.W.2d 510 (Mo. 1993). Because there is no "section 2" within Section 701.359 RSMo 1994, there exists at least an apparent ambiguity. However, in reviewing all of the provisions that reference elevator codes it is clear that the legislature intended to allow cities to enforce their own codes only if such codes were at least as stringent as those adopted pursuant to Section 701.355(2) RSMo 1994. It is logical to conclude that it is that subsection that is referenced in Section 701.359 RSMo 1994.
The board has the general authority to enforce the provisions of the elevator safety and inspection provisions of Sections 701.350 to 701.380
RSMo. A review of these sections show that the legislature intended to have inspections of all elevators, escalators, moving walks, manlifts and personnel hoists, and that the board was to adopt rules consistent with those provisions to ensure timely and proper inspections. Consistent with that policy was the authority for cities to undertake such inspections and to enforce their own standards as long as those standards are at least as stringent as those adopted by the board. The board's rulemaking authority is established at Section 701.355(2) RSMo 1994. There is no justification for weaker standards of safety in cities that undertake their own inspections. However, it does make sense that a city may enact tougher standards, as well as making sense that a city with ordinances that are at least as stringent as that adopted by the board would utilize its own inspectors, who are trained and experienced with enforcing the city's codes. The interpretation suggested herein is consistent with these purposes.
In attempting to interpret a statute it is appropriate to consider the entire purpose and policy of the statute, as well as the totality of the enactment. State ex rel. Henderson v. Proctor, 361 S.W.2d 802 (Mo. 1962). It is also necessary to ascertain the true intent by construing all of the provisions and, if possible, harmonizing those provisions.Parkville Benefit Assessment Special Road District v. Platte County,906 S.W.2d 766 (Mo.App. 1995). To discover that intent it is likewise appropriate to examine the problem sought to be addressed by the statute.State ex rel. Whiteco Industries, Inc. v. Bowers, 965 S.W.2d 203
(Mo.App. 1998).
It appears from a review of the statute and from the information supplied the legislature had concerns about the safety of elevators and wanted to establish minimum standards to be applied when inspecting elevators. It is illogical to conclude that the legislature intended to exempt from the state requirements elevators within cities that had less stringent criteria. On the other hand it is indicated in the information we have received that there was an intention to exclude Kansas City and St. Louis from the board's rules, apparently because those cities had experienced code enforcement personnel. However, as stated above, the statute as enacted, only excludes political subdivisions that have enacted ordinances at least as stringent as the board's rules.
From the information that we have in this office there is apparent disagreement whether the standards being utilized by the city of Kansas City are at least as stringent as those adopted by the board. We make no judgment on that question. However, the statute does require that any code utilized by a city or other political subdivision be at least as stringent as that established by the state board. This conclusion is supported by Section 701.363 RSMo 1994, installations having state certificate of inspection, Section 701.365 RSMo 1994, duties of the state's chief safety inspector, Section 701.367 RSMo 1994, enforcement provisions of political subdivisions and Section 701.369 RSMo 1994, certification of safety inspectors.
 CONCLUSION
A political subdivision may enforce its own code regarding elevator safety in lieu of the code adopted by the elevator safety board if the political subdivision has adopted a code which is at least as stringent as that adopted by the elevator safety board.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General