**PRESS–JOURNAL PUBLISHING COMPANY, Plaintiff–Appellant,**

v.

**ST. PETERS COURIER–POST, and Robert Brockgreitens, Publisher, and Pulitzer Publishing Co., Defendants–Respondents.**

No. 41506.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 7, 1980.

**454**

Robert V. Niedner, St. Charles, for plaintiff—appellant.

Dale L. Rollings, St. Charles, Robert B. Hoemeke, St. Louis, for defendants—respondents.

SIMON, Judge.

This is an appeal from a declaratory judgment rendered by the Circuit Court of St. Charles County which decreed that the Wentzville Union, the St. Peters Courier—Post and the St. Louis Post—Dispatch are all qualified to publish legal notices under § 493.050[1] for St. Charles County. The action was instituted by the appellant, Press—Journal Publishing Company, the owner and publisher of the Wentzville Union, a weekly newspaper published in Wentzville, Missouri. The appellant sought a judgment declaring that the St. Peters Courier—Post (Courier—Post) and the St. Louis Post—Dispatch (Post—Dispatch) did not meet the requirements of § 493.050 and therefore could not publish legal notices in St. Charles County. From an adverse judgment in a court—tried case the Press—Journal Publishing Company appeals. We affirm.

Appellant's first contention is that the court erred in finding the Post—Dispatch is qualified under § 493.050 to publish legal notices within St. Charles County because the newspaper business of the Post—Dispatch is not located within that county, and its second class mailing permit is in and for the City of St. Louis. Appellant further contends that the trial court erred in finding that the St. Peters Courier—Post has been published regularly and consecutively for a period of three years and that the St. Peters Courier—Post has a list of bona fide subscribers who have paid or agreed to pay a stated price for a subscription as required by § 493.050.

The St. Louis Post—Dispatch is a daily newspaper published by the respondent, the Pulitzer Publishing Company, in the City of St. Louis, Missouri. The general offices of the Post—Dispatch including the printing facilities, advertising and editorial offices

1. All references shall be the Revised Statutes of Missouri 1978 unless otherwise noted.

are located at 900 N. 12th Blvd., in the City of St. Louis. The newspaper is first distributed in front of that building. The Post–Dispatch has been published regularly and consecutively for a period in excess of three years; has been admitted to the post office as a second class matter in the City of St. Louis; and has a list of bona fide subscribers who have paid or agreed to pay a stated price for a subscription for a definite period of time. The Post–Dispatch is of general circulation in St. Charles County where it had an average daily circulation of 11,386 and an average Sunday circulation of 7,744 in October of 1978.

The Courier–Post is a weekly newspaper owned and operated by the respondent, Robert Brockgreitens, its sole proprietor. It is published at St. Peters, in St. Charles County. Brockgreitens became owner of the newspaper on May 30, 1978, when he purchased the assets of the O'Fallon–St. Peters Times, Inc. (Times), publisher of a weekly newspaper which had been published at O'Fallon in St. Charles County for approximately twenty years. The assets purchased consisted of the list of its subscribers, the postal permit, the addressograph machine and plates, the name of the paper, the advertising contracts in force, and various office items and equipment. At the time Brockgreitens purchased the Times it had a weekly circulation of 3,770.

Brockgreitens immediately changed the name of the newspaper to the St. Peters Courier–Post. The last issue of the Times was dated May 25, 1978. That issue was not actually mailed to subscribers until June 3, 1978. The first issue of the Courier–Post was published and distributed on June 1, 1978.

Shortly after Brockgreitens purchased the assets he sent out an inquiry to the people on the subscription list to determine the status of their subscriptions and to solicit new subscriptions. Approximately 50% of his inquiries were returned, some of them indicating they had paid–up subscriptions and others indicating they had not. Brockgreitens also obtained some additional subscriptions to the Courier–Post. At the time of trial, the Courier–Post had a subscription list of 2,082 paid or agreed–to–pay subscribers. The current subscribers of the Courier–Post consisted of both former subscribers to the Times and additional subscribers Brockgreitens had obtained. Brockgreitens sold subscriptions on a yearly, two–year or three–year basis at a price of $5.00 per year.

The O'Fallon–St.Peters Times was printed and hand delivered, but not mailed, for the period November 4, 1977 to January 12, 1978.

■ In a declaratory judgment action tried before a court without a jury, we shall review the case in accordance with the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) wherein our Supreme Court held that the decree or judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless the court erroneously declares the law, or erroneously applies the law.

■ Appellant's first point concerning the Post–Dispatch's eligibility to publish legal notices for St. Charles County, involves statutory interpretation of § 493.050 which, in relevant part, reads as follows:

"All public advertisements and orders of publication required by law to be made and all legal publications affecting title to real estate, shall be published in some daily, triweekly, semiweekly or weekly *newspaper of general circulation in the county where located* and which shall have been admitted to the post office as second class matter in the city of publication; shall have been published regularly and consecutively for a period of three years; shall have a list of bona fide subscribers voluntarily engaged as such, who have paid or agreed to pay a stated price for a subscription for a definite period of time; ..." (emphasis added)

In particular the issue concerns the interpretation of the phrase "newspaper of general circulation in the county where located." Appellant would interpret this phrase

to mean that before a newspaper can be eligible to publish legal notices under § 493.050 for a particular county, its plant and printing facilities must be "located" within that county.

Appellant relies mainly on other Missouri notice statutes to draw support for its contention. Appellant relies on § 513.205 which provides that notice of an execution sale of real estate be published in a newspaper "printed in the county" where the real estate is situated. It also relies on § 493.-075 which provides generally that when notices are required to be posted, they may also be published in a newspaper, and provides that the newspaper must be "published in the locality where the act or thing is required." However, the fact that these statutes cited by appellant require that the newspaper be printed or published within a certain locality is not necessarily indicative of the meaning of § 493.050. The statutes cited by appellant are explicit in their wording. If the legislature had intended that the same requirements set forth in these sections were to be the requirements of § 493.050, it would have used the same or similar wording. Indeed, § 115.389 RSMo. 1978, effective January 1, 1978, imposes only one requirement for the publishing of election notices: "The notice shall be published in a newspaper of general circulation within the jurisdiction of the election authority." There is no requirement that the newspaper be published within the jurisdiction.

Appellant, in support of its contention, relies on cases interpreting statutes having different wording and requirements and therefore are not dispositive of the issue before us.

■■■ A basic rule of statutory construction is to seek the legislative intent and to give effect to that intent, if possible, considering the words used in their plain and ordinary meaning. *State v. Kraus*, 530 S.W.2d 684 (Mo. banc 1975); *Dravo Corporation v. Spradling*, 515 S.W.2d 512 (Mo.

1974). It is also appropriate to consider the history of a statute as well as its purpose and object. *Person v. Scullin Steel Company*, 523 S.W.2d 801 (Mo. banc 1975).

The history of § 493.050 reveals that until 1927, the statute with regard to legal publication was significantly different than it is today. Section 318 RSMo. 1879, an ancestor of § 493.050 provided:

"All advertisements and orders of publication required by law to be made, shall be published in some newspaper *published and circulated* in the county in which the proceedings are had, to which such advertisements and orders of publication shall pertain, if there be one, and if there be no newspaper published in such county, then in some newspaper published the most convenient thereto, having a circulation therein, unless otherwise provided by law." (emphasis added)

Some interesting observations can be made with regard to this statute. First of all, there was an explicit requirement that the newspaper be published and circulated in the county in question. Only if no newspaper was published in the county could that county's legal notices be printed in a newspaper which was not published in the county but circulated therein. Secondly, the legislature was more articulate in identifying the county in which the newspaper was required to be published and circulated. There is a clear requirement that the newspaper be published and circulated in the county in which the proceedings to which the legal notices pertain are held.

This statute contained the exact same wording until it was amended in 1927.[2] Laws of Mo.1927, p. 401,[3] in pertinent part provided:

"All public advertisements and orders of publication required by law to be made shall be published in some daily, semi–weekly, tri–weekly, or weekly newspaper of general circulation in the county where located and which shall have been published continually for a period of at least one year."

---

**2.** See § 310 RSMo. 1889; § 4690 RSMo. 1899; § RSMo. 1909; § 10403 RSMo. 1919.

**3.** Later compiled into § 13775 RSMo. 1929.

The requirement that the newspaper be published in the county in question was eliminated. The wording was changed to merely require that the newspaper be generally circulated in the county.

On various occasions since 1927, the legislature had reconsidered the statute and made several changes. However, at no time did the legislature return to the previous requirement that the newspaper be both published and circulated in the county in question.

The next change came in 1931 when the statute was amended to a form that was substantially the same as the present § 493.050. Laws of Mo.1931, p. 303 was entitled "Public advertisements and orders of publication to be published in newspaper of county" and provided:

> All public advertisements and orders of publication required by law to be made, and all legal publications affecting title to real estate, shall be published in some daily, tri–weekly, semi–weekly or weekly newspaper of general circulation in the county where located and which shall have been admitted to the post office as second class matter in the city of publication; shall have been published regularly and consecutively for a period of one year; shall have a list of bona fide subscribers voluntarily engaged as such who have paid or agreed to pay a stated price for a subscription for a definite period of time. Provided that when a public notice required by law to be published once a week for a given number of weeks, shall be published in a daily, tri–weekly, semi–weekly or weekly newspaper, the notice shall appear once a week on the same day of each week, and further provided, that every affidavit to proof of publication shall state that the newspaper in which such notice was published has complied with the provisions of this act.

By this amendment the legislature included publication affecting title to real estate, and added the requirements that the newspaper be admitted to the post office as second class matter in the city of publication and that it have a bona fide list of subscribers. No other changes were made at this time.

The statute was amended only twice since 1931 before the statute became what is now § 493.050. In 1937, the period of time for which the newspaper was required to be *regularly and consecutively published* was changed from one year to three years, and the title was changed to read "Public advertisements and orders of publication to be published only in certain newspapers." [4] The 1943 act added the provisions relating to reinstatement of a paper suspended in time of war.[5]

■ As a general rule, a change in a statute is ordinarily intended to have some effect, and the legislature will not be charged with having done a meaningless act. *State ex rel. Thompson–Stearns–Roger v. Shaffner,* 489 S.W.2d 207 (Mo.1973). Thus, if the legislature intended to require that the newspaper be published in a county to qualify for legal advertising therein then the legislature would *not* have omitted such a requirement when the statute was amended in 1927.

■ There is no requirement in § 493.050 that a newspaper be published in a county before it can publish legal notices for such county. The present requirement is that the newspaper be "of *general circulation* in the county." (emphasis added) Appellant argues that to require "general circulation" alone to be the requirement rather than including publishing also would allow an individual *to* select a newspaper far removed from the county where the proceedings are taking place and that has some circulation in the county to publish legal notices. However, appellant ignores the phrase "of general circulation in the county." We believe the phrase "general circulation" requires a sufficient nexus to the

---

4. Laws of Mo.1937, p. 431; Later compiled into § 14968 RSMo. 1939.

5. See Laws of Mo.1943, p. 859.

county.[6] This interpretation is supported both by the purpose and object of § 493.050 as well as its historical development.

It is the purpose of legal notices and advertisements to give notice of legal and public events and proceedings. Thus it is reasonable and necessary to require that the newspaper be generally circulated in the county where such events and proceedings have occurred or are to be held. Indeed, an essential of § 318 RSMo. 1879, was that the newspaper be "circulated in the county in which the proceedings are had."

Respondent suggests that the words "county where located" as used in § 493.050, apply to the real estate referred to in the preceding clause of that section. Such a requirement, that legal publications involving title to real estate be published in a newspaper of general circulation in the county where the real estate is located, is a sensible one. However, such an interpretation ignores "public advertisements" and "orders of publication required by law to be made" which do not affect title to real estate. We believe the better interpretation is that the phrase "county where located" relates to "public advertisements" and "orders of publications" and "legal publications affecting the title to real estate." All three are different types of legal notices and are set out grammatically using the conjunction "and." Again referring to Laws of Mo.1927, p. 401, there was a requirement that the newspaper be "of general circulation in the county *where located*" without any mention of real estate in the statute.

▮ It has also been suggested that the statute be interpreted to require that the newspaper be of general circulation in the county where the *newspaper* is located. The statute could be read that way, however, a statute should not be construed to lead to an absurd result. *State ex rel. Zoological Park Subdistrict of the City and County of St. Louis v. Jordan*, 521 S.W.2d 369, 372 (Mo.1975). Such a requirement would allow a newspaper to publish legal notices for a county in which the newspaper had no circulation.

The only reasonable interpretation of § 493.050, in light of legislative history, intent and objective, is one which would require that a newspaper be of general circulation in the county for which it is to publish legal notices. Our ruling on appellant's first contention is dispositive of its other arguments on this point.

Appellant's first point is without merit.

Appellant's remaining allegations of error relate to the trial court's ruling as to the St. Peters Courier–Post. Appellant contends that the trial court erred in declaring that the Courier–Post is qualified to publish legal notices for St. Charles County under § 493.050 for the reasons that: (1) the Courier–Post has not been published regularly and consecutively for a period of three years; and (2) the evidence does not support the trial court's finding that the Courier–Post has bona fide subscribers who had paid or agreed to pay for subscriptions.

▮ The "Findings of Fact" made by the trial court pursuant to a request under Rule 73.01 includes a finding that the Courier–Post has been published regularly and consecutively for a period of three years as a successor to the O'Fallon–St. Peters Times, and that the Courier–Post has a list of bona fide subscribers who have paid or agreed to pay for subscriptions for a definite period of time.

The evidence favorable to the trial court's findings consists of testimony and documentary evidence that respondent Brockgreiten purchased the assets of the Times on May 30, 1978; that the Courier–Post has been published each week since respondent Brockgreiten purchased the assets of the Times; that prior to the date Brockgreiten purchased the assets the Times had been printed and distributed each week for a period in excess of three years; that the last issue of the Times was printed on May 25, 1978; that the first issue of the Couri-

---

**6.** See *State of Missouri ex rel. Reorganized School District No. R–6 of Daviess County,* *Missouri v. Haskell Holman,* 275 S.W.2d 280, 282 (Mo. banc 1955).

er–Post was printed on June 1, 1978; that included in the assets Brockgreiten bought from the Times were all outstanding subscriptions and two racks of addressograph plates with all subscribers' names and addresses; that at the time of trial the Courier–Post had a subscription list of 2,082, represented by index cards containing the subscribers' names, addresses and expiration dates of the respective subscriptions; that the Courier–Post at the time of trial had subscribers who bought subscriptions on a yearly, two–year or three–year basis at a price of $5.00 per year.

In support of its contention that the Courier–Post has not met the three year requirement of § 493.050, appellant relies on the fact that the newspaper was operating under a new name, new ownership and at a different city of publication, and on the fact that the first edition of the Courier–Post was number "Volume 1, Issue 1" and included a story headlined, "Times Closes Door After 27 Years." Appellant contends that these facts show that the Courier–Post is not merely a continuation of the Times and therefore must start anew to meet the requirement of regular and consecutive publication.

Appellant argues alternatively, that even if the Courier–Post can be considered a continuation of the Times, the newspaper still had not been published regularly and consecutively for three years. In support of this position, appellant relies on the fact that the last issue of the Times was printed on May 25, 1978, but was not mailed until June 3, 1978.

We find that this overly strict interpretation which appellant urges us to adopt places too much emphasis on form rather than on the substance and purpose of the continuity requirement. *State ex rel. Henderson v. Proctor*, 361 S.W.2d 802 (Mo.1962) is the only case we have found which has interpreted the three year requirement of § 493.050. In that case, the Missouri Supreme Court held that a well established weekly newspaper did not become disqualified from publishing legal notices by the mere fact that it did not publish a paper in the last week of December. In so holding the court stated: "We think it may be reasonably deduced that the primary and basic purpose of the act is to require publication in a 'going' regularly published and well established newspaper. This, upon the theory that, by reason of long establishment of the newspaper in which it is published, the notice will more likely come to the attention of a greater number of citizens in the county."

We believe there was substantial evidence at trial for the court to find that the Courier–Post is a well established and "going" newspaper. The fact that the newspaper underwent a change of name and ownership is not determinative. Although our research has not uncovered any other Missouri cases dealing with the specific point, other jurisdictions have liberally construed the continuity requirement in similar statutes. In *Board of Commissioners of Decatur County v. Greensburg Times*, 19 N.E.2d 459 (Ind.1939), a newspaper was not disqualified from being classified as a "newspaper" within the meaning of a statute requiring publication of county notices in newspapers "which shall have been published for five consecutive years" by the fact that it changed ownership and missed a few issues during that period. *In re LeFavor*, 169 P. 412 (Cal.App.1917), involved the issue of whether a newspaper had been established, printed and published at regular intervals for at least one year preceding the date of the official notice or advertisement as required by the applicable statute. The court held that even though a newspaper moved its place of publication, underwent a change of name and new management, it qualified to publish legal notices.

Appellant further contends that three years of continuous publication was upset when the Times was hand delivered by private carrier rather than mailed during the period November, 1977 and January, 1978. This contention is without merit. There is no requirement that the newspaper be mailed to subscribers. It simply requires that the paper "shall have been published regularly and consecutively for three

years." There is no prescribed method of distribution.

■ As to appellant's final contention, we find that there was substantial evidence to support the trial court's finding that the Courier–Post has a bona fide list of subscribers who have paid or agreed to pay a stated price for a definite period of time. Appellant cites no authority which would lead to a contrary finding. Appellant's point is not well taken.

Judgment affirmed.

SMITH, P. J., and SATZ, J., concur.