Dear Representative Patterson:
This is in response to your request for an opinion as follows:
 May a "weekly" paper that has operated as such for many years which converts to a "daily" paper qualify for the three years of regular and consecutive publication required by section 493.050, RSMo 1978, without having to wait three years after having published daily?
Section 493.050, RSMo 1978, describes the type of newspapers in which legal advertisements and notices may be published. That section reads, in pertinent part:
 All public advertisements and orders of publication required by law to be made and all legal publications affecting the title to real estate, shall be published in some daily, triweekly, semiweekly or weekly newspaper of general circulation in the county where located and which shall have been admitted to the post office as second class matter in the city of publication; shall have been published regularly and consecutively for a period of three years; shall have a list of bona fide subscribers voluntarily engaged as such, who have paid or agreed to pay a stated price for a subscription for a definite period of time; . . . .
We find no provision in either Missouri statutes or appellate judicial decisions specifically addressing the qualifications of a newspaper for legal publications in situations where a newspaper changes from a weekly to a daily publication. Therefore, we must turn to Section 493.050 and construe its language so as to give effect to the legislature's intent in enacting the statute. In so doing, we must consider the purpose and object of the statute.See, Press-Journal Publishing Company v. St. Peters Courier-Post,607 S.W.2d 453, 456, (Mo.App. 1980); State ex rel. Henderson v.Proctor, 361 S.W.2d 802, 804 (Mo. banc 1962).
The Missouri Supreme Court interpreted the three-year requirement of Section 493.050 in Proctor, stating, in relevant part:
 Prior to 1937 the law of Missouri . . . provided that such newspapers be published regularly and consecutively for a period of only one year. In 1937 the period was changed to require a period of three years. We think it may be reasonably deduced that the primary and basic purpose of the act is to require publication in a "going", regularly published and well established newspaper. This, upon the theory that, by reason of long establishment of the newspaper in which it is published, the notice will be more likely to come to the attention of a greater number of citizens of the county. Proctor, supra at 805.
We believe that a newspaper published for many years as a weekly paper which converts to a daily paper does not lose its status as a going, regularly published, and well-established newspaper merely as a result of such conversion. To require such a newspaper to begin a new three-year period of publication after converting to a daily paper is an overly strict interpretation of Section 493.050, placing too much emphasis on form rather than on the substance and purpose of the three-year requirement. See, St.Peters Courier-Post, supra at 459.
Our opinion is in accord with the decision of the California Court of Appeals in In re Tribune Pub. Co. of Palo Alto,108 P. 667 (Cal.App. 1910), where a California statute required, among other things, that a newspaper shall have been established, printed, and published at regular intervals for at least one year in order to be entitled to print public and legal notices. In that case the Palo Alto Tribune was published as a weekly paper during part of the required one-year period, and as a daily paper during the remainder of that one-year period. The California Court of Appeals ruled:
 [I]t appears plain to us, bearing in mind the purpose of the act as well as the language of the provision in question, that the publication in this case constitutes a publication at regular intervals for one year. Id. at 668.
See also, St. Peters Courier-Post, supra at 459 (ruling that a newspaper which underwent a change of name and ownership did not lose its status as a well-established and going newspaper by reason of such change).
Furthermore, it is possible to ascertain the intent of the legislature in enacting Section 493.050 by examining the language of related statutes. St. Peters Courier-Post, supra at 456. Section 493.070, RSMo 1978, requires that in cities of a population of 100,000 inhabitants or more, all public notices and advertisements shall be published in some daily newspaper of such city, as opposed to a triweekly, semiweekly, or weekly newspaper. The statute further requires, among other things, that such daily newspaper "shall have been established and continually publishedas such for a period of at least three consecutive years next prior to the publication of any such notice". Section 493.070, RSMo 1978 (emphasis added). By using the term "as such", the Missouri General Assembly intended to preclude from consideration in cities of a population of 100,000 inhabitants or more those newspapers which were not operating as daily papers for the entire three-year period.
The three-year requirement of Section 493.050 does not contain the phrase "as such" or any similar language. "If the legislature had intended that the same requirements set forth in . . . [Section 493.070] were to be the requirements of § 493.050, it would have used the same or similar wording." St. PetersCourier-Post, supra at 456.
CONCLUSION
It is the opinion of this office that a newspaper published as a weekly paper which converts to a daily paper may use the time published as a weekly paper together with the time published as a daily paper to satisfy the provision of Section 493.050, RSMo 1978, requiring a newspaper to have been published regularly and consecutively for a period of three years. This opinion does not address whether such a newspaper meets the other requirements of Section 493.050, RSMo 1978.
The foregoing opinion which I hereby approve, was prepared by my assistant, Robert E. Dolan, Jr.
Very truly yours,
 JOHN ASHCROFT Attorney General