In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

JASON A. LEWANDOWSKI, ) No. ED109368
 )
 Respondent, )
 )
vs. ) Appeal from the Circuit Court
 ) of Jefferson County
ALABAMA HOUSING FINANCE ) 19JE-CC00273
AUTHORITY, SERVISOLUTIONS, INC., )
SUBSTITUTE TRUSTEE )
CORPORATION, )
 )
and ) Honorable Troy A. Cardona
 )
MISSOURI LAWYERS MEDIA, LLC, )
 )
 Appellants. ) FILED: September 28, 2021

 Alabama Housing Finance Authority, ServiSolutions, Inc., Substitute Trustee Corporation

(collectively, the “Foreclosure Defendants”) and Missouri Lawyers Media, LLC (“MLM”) appeal

the trial court’s entry of summary judgment in favor of Jason A. Lewandowski. The underlying

lawsuit arose from Lewandowski’s challenge to the non-judicial foreclosure of his home by the

Foreclosure Defendants, the notice of which was published in The Jefferson Countian1 (“The

Countian”), a newspaper owned by MLM. The Foreclosure Defendants and MLM (collectively,

1
 Although the record shows that different entities have used various names to refer to the newspaper, the parties use
the name “The Jefferson Countian.”
“Appellants”) challenge the trial court’s conclusion that the foreclosure sale was void because the

notice of the foreclosure was invalid since The Countian was not qualified to publish real estate

notices in Jefferson County. We reverse the grant of summary judgment in Lewandowski’s favor,

vacate the judgment voiding the foreclosure sale and remand for further proceedings. We also

enter judgment in favor of MLM on the issue of The Countian’s qualification to publish the

relevant notices in Jefferson County.

 Factual and Procedural Background

 The underlying case arose from a non-judicial foreclosure on Lewandowski’s property,

which occurred on February 8, 2019. Notice of the foreclosure sale was published from January

11, 2019 to February 1, 2019 in The Countian. After the foreclosure sale, Lewandowski filed a

petition asserting claims against the Foreclosure Defendants for wrongful foreclosure and

violations of the Missouri Merchandising Practices Act and also seeking to quiet title. The counts

for wrongful foreclosure and to quiet title were also filed against the individual who purchased the

property at the foreclosure sale. As relevant here, Lewandowski alleged the foreclosure was

wrongful because notice of the foreclosure sale was invalid in that The Countian was not qualified

to publish real estate notices in Jefferson County because it had not been approved to do so by a

majority of the judges of the Jefferson County Circuit Court pursuant to section 493.027. 2 MLM

intervened in the suit for the purpose of validating The Countian’s qualification to publish

foreclosure notices in Jefferson County; it sought a declaratory judgment that the newspaper was

qualified under section 493.050 to publish such notices.

 MLM filed a motion for summary judgment on the issue of its qualification under sections

493.050 and 493.055 to publish foreclosure notices and as to whether section 493.027 requires a

2
 All statutory references are to the Revised Statutes of Missouri (2016).

 2
circuit court to approve a newspaper prior to its publication of notices in a county of first

classification, such as Jefferson County. MLM supported its motion for summary judgment with

a verified affidavit from Liz Irwin, the publisher of The Countian (the “Irwin Affidavit”), attesting

that The Countian met the list of requirements for qualification under section 493.050.

Lewandowski opposed the motion for summary judgment and filed a cross-motion for summary

judgment arguing that The Countian’s failure to secure approval from the Circuit Court of

Jefferson County invalidated the notice of the foreclosure sale and rendered the sale void.

 The trial court granted Lewandowski’s motion for summary judgment and denied MLM’s

motion for summary judgment. The trial court identified the sole issue before it as “whether a

newspaper in a county of first classification must be qualified by a board of the Judges of the

Circuit Court of such county, or a majority of them, in order to be qualified to legally publish

advertisements affecting sales of real estate under a power of sale contained in a mortgage or deed

of trust.” Answering this question in the affirmative, the trial court concluded The Countian “is

not and was not at the time of the Lewandowski [f]oreclosure qualified to advertise non-judicial

foreclosures under the provisions of [sections] 493.027, 493.050, 493.055, and 417.200.” The trial

court reasoned that: (1) section 493.027 required The Countian to obtain approval from a majority

of the judges of the Circuit Court of Jefferson County, but it failed to do so; (2) MLM failed to

register The Countian as a fictitious name as provided by section 417.200; and (3) the Irwin

Affidavit was inadequate to show qualification to publish real estate notices under section 493.050.

Having concluded The Countian was not qualified to publish such notices, the trial court held the

notice of the foreclosure failed and the foreclosure was void. The trial court certified its judgment

for immediate appeal pursuant to Rule 74.01(b), concluding there was “no just reason for delay.”

This appeal follows.

 3
 Finality of Judgment for Purposes of Appeal

 There must be a final, appealable judgment in order for an appellate court to consider the

merits of an appeal. Wilson v. City of St. Louis, 600 S.W.3d 763, 767-73 (Mo. banc 2020); see

also section 512.020(5). A judgment is “final” for purposes of appeal when it either “disposes of

all claims (or the last claim) in a lawsuit” or “it has been certified for immediate appeal pursuant

to Rule 74.01(b).” Wilson, 600 S.W.3d at 771. A circuit court may certify for immediate appeal

“a judgment as to one or more but fewer than all of the claims or parties” if the court expressly

finds “there is no just reason for delay.” Rule 74.01(b).3 A judgment is eligible to be certified for

immediate appeal “only if it disposes of a ‘judicial unit’ of claims, meaning it: (a) disposes of all

claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently

distinct from the claims that remain pending in the circuit court.” Wilson, 600 S.W.3d at 771.

 Here, the trial court’s judgment denied MLM’s motion for summary judgment and granted

Lewandowski’s cross-motion for summary judgment on the narrow issue posed by MLM’s

intervention: The Countian’s qualification to publish notice of non-judicial foreclosure sales in

Jefferson County and, more specifically, the effect of section 493.027 on this qualification. The

judgment thus resolved all claims between MLM and Lewandowski, effectively disposing of a

“distinct judicial unit” and making it eligible for immediate appeal under Rule 74.01(b). See id.

at 771-72.

 Standard of Review

 Appellate review of a trial court’s grant of summary judgment is de novo. ITT Com. Fin.

Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Summary

judgment is proper where there is no genuine issue of material fact and the moving party is entitled

3
 All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

 4
to judgment as a matter of law. Rule 74.04(c)(6). “The movant bears the burden of establishing

both a legal right to judgment and the absence of any genuine issue of material fact required to

support the claimed right to judgment.” Bob DeGeorge Assocs. v. Hawthorn Bank, 377 S.W.3d

592, 596 (Mo. banc 2012). The record and all reasonable inferences therefrom are viewed in the

light most favorable to the party against whom judgment was entered. ITT, 854 S.W.2d at 376.

 Discussion

 I. Interpretation and Applicability of Section 493.027

 In their first point on appeal, Appellants contend the trial court erred in concluding section

493.027 applies to legal publications affecting title to real estate, including non-judicial foreclosure

sales such as the one at issue here, rather than applying only to “public notices and advertisements.”

Appellants’ second point asserts the trial court erred in concluding that section 493.027 mandates

qualification of a newspaper by a circuit court en banc4 even when the circuit court has established

no rule or order governing qualification procedures. We conclude Appellants’ second point has

merit. Because this point is dispositive of the interpretation of section 493.027 as relevant to this

appeal, we decline to address the broader question raised in Appellants’ first point on appeal.

 For a foreclosure notice to be valid, it must be published in a statutorily qualified

newspaper. Legal Commc’ns Corp. v. St. Louis Cnty. Printing & Publ’g Co., 24 S.W.3d 744, 748

(Mo. App. E.D. 2000). The goals of publication are “to ensure that those who have an interest in

real property will receive adequate notice if that property becomes subject to a foreclosure sale”

4
 Section 493.027 concerns “a board consisting of the judges of the circuit court of such county, or a majority of them.”
Throughout this opinion, we utilize the term “en banc” to encompass both a board consisting of all the judges of a
circuit court and a majority of them. Although we recognize the term “en banc” describes the full court consisting of
all the judges, see En Banc, BLACK’S LAW DICTIONARY (11th ed. 2019), we employ this shorthand for purposes
of simplicity.

 5
and to inform the public of the details of the sale. Id.; see also Swearengin v. Swearengin, 202

S.W. 556, 558 (Mo. 1918).

 Chapter 443, which governs mortgages, deeds of trust and mortgage brokers, provides the

requirements for adequate notice of a non-judicial foreclosure sale, including the length of the

notice, the number of times the notice must be published and where the notice must be published.

See sections 443.310-.320. Notice must be published in a “newspaper.” Section 443.320.

 The necessary qualifications for a newspaper wishing to publish notices are found in

Chapter 493, which governs legal publications, notice and advertisements. Section 493.055

specifically governs “[a]ll public advertisements and orders of publication required by law to be

made, including . . . legal publications affecting all sales of real estate under a power of sale

contained in any mortgage or deed of trust, and other legal publications affecting the title to real

estate.” Section 493.055 provides that any covered notices “shall be published in a newspaper of

general circulation, qualified under the provisions of section 493.050.” That section outlines the

necessary qualifications for a newspaper that publishes “[a]ll public advertisements and orders of

publication required by law to be made and all legal publications affecting the title to real estate.”

Section 493.050.

 The primary issue in this case is whether section 493.027 governs the qualifications of

newspapers seeking to publish foreclosure-sale notices. That section provides, in relevant part,

that “a board consisting of the judges of the circuit court” of any first classification county or the

City of Saint Louis, “or a majority of them, if they deem it in the public interest, may qualify any

newspaper of general circulation, and as further qualified in section 493.050, for the publication

of public notices and advertisements, and may review and approve rates which may be charged for

public notices and advertisements.” Section 493.027.

 6
 Statutory interpretation is a question of law, which we review de novo on appeal. Dodson

v. City of Wentzville, 216 S.W.3d 173, 176 (Mo. App. E.D. 2007). “The primary rule of statutory

construction is to ascertain the intent of the legislature from the language used, to give effect to

the intent if possible, and to consider words used in the statute in their plain and ordinary meaning.”

Howard v. City of Kan. City, 332 S.W.3d 772, 779 (Mo. banc 2011) (quoting Farmers’ &

Laborers’ Co-op Ins. Ass’n v. Dir. of Revenue, 742 S.W.2d 141, 145 (Mo. banc 1987)).

 Section 493.027’s use of the words “may” and “if they deem it in the public interest”

describes the circuit court’s discretion in qualifying a newspaper. “The word ‘may’ is generally

recognized as the equivalent of the word ‘can’ and denotes a possibility, likelihood or

contingency.” Bennett v. Dir. of Revenue, 889 S.W.2d 166, 169 (Mo. App. W.D. 1994) (citation

omitted). “On the other hand, the word ‘shall’ is usually used to express ‘compulsion, obligation

or necessity.’” Id. (quoting WEBSTER’S NEW TWENTIETH CENTURY DICTIONARY 1666 (2d ed.

1979)). Lewandowski argues this discretion pertains to the circuit court’s ability to decide whether

to qualify a newspaper once the newspaper petitions the court en banc. Appellants, however, argue

this discretion pertains to the circuit court’s ability—in the event it decides to oversee the

qualification of newspapers—to establish specific procedures for newspapers to qualify.

 We agree with Appellants’ interpretation. The plain language of section 493.027 does not

direct a newspaper to take any specific action to become qualified to publish notices and does not

direct a circuit court to take any specific action regarding oversight of newspaper publications.

Again, section 493.027 provides that “a board consisting of the judges of the circuit court . . . or a

majority of them, if they deem it in the public interest may qualify any newspaper” to publish

“public notices and advertisements.” (emphasis added). The statute allows a circuit court to

establish procedures for newspapers seeking to be qualified, but does not require a newspaper to

 7
petition the court for approval in the absence of such procedures. If the legislature had intended

to require newspapers or publishers to seek qualification and approval from the circuit court prior

to publishing such notices, it would have included language to that effect in the statute. See Press-

J. Publ’g Co. v. St. Peters Courier-Post, 607 S.W.2d 453, 456 (Mo. App. E.D. 1980); see also

section 493.110 (setting forth requirements for newspapers seeking to publish certain notices in

cities with a population of 600,000 or more). In the absence of such a directive, we construe

section 493.027 as providing a means for circuit courts to oversee newspaper qualification and

publication rates if they choose to engage in active oversight by promulgating local rules.

 Here, it is undisputed that the Circuit Court of Jefferson County had not established local

rules or procedures pursuant to section 493.027 for qualifying newspapers to publish public

notices. Because section 493.027 does not mandate a newspaper petition a circuit court en banc

to be qualified when the circuit court has not established specific procedures for qualification, we

hold the trial court erred in concluding The Countian was not qualified to publish foreclosure

notices in Jefferson County on the basis that it had not petitioned and been approved by the circuit

court en banc. Point I is denied as moot and Point II is granted.

 II. The Countian’s Qualification to Publish Notices of Non-Judicial Foreclosures
 For ease of analysis, we address the remaining points on appeal out of order. In its fourth

point, MLM contends the trial court erred in entering summary judgment in favor of Lewandowski

and should have instead granted summary judgment in MLM’s favor because the uncontroverted

material facts established The Countian was qualified under section 493.050 to publish notices of

non-judicial foreclosure sales. MLM’s fifth point asserts that, even if it was not entitled to

summary judgment on this issue, the trial court nevertheless erred in entering summary judgment

in favor of Lewandowski because he failed to establish The Countian was not qualified under

section 493.050 to publish such notices. We conclude the trial court erred in entering summary

 8
judgment in favor of Lewandowski on this issue and further find the trial court should have entered

summary judgment in favor of MLM because the uncontroverted material facts established The

Countian was qualified under section 493.050.

 Section 493.055, which specifically governs “legal publications affecting all sales of real

estate under a power of sale contained in any mortgage or deed of trust,” states that non-judicial

foreclosure sale publications “shall be published in a newspaper of general circulation, qualified

under the provisions of section 493.050.” That section outlines the necessary qualifications for a

newspaper that publishes “[a]ll public advertisements and orders of publication required by law to

be made and all legal publications affecting the title to real estate.” Section 493.050. It also

establishes five requirements for a newspaper to be so qualified: (1) that it be published “daily,

triweekly, semiweekly or weekly”; (2) that it be a “newspaper of general circulation in the county

where located”; (3) that it be “admitted to the post office as periodicals class matter in the city of

publication”; (4) that it have been “published regularly and consecutively for a period of three

years”; and (5) that it have a list of voluntary, bona fide subscribers “who have paid or agreed to

pay a stated price for a subscription for a definite period of time.” Section 493.050.

 MLM supported its motion for summary judgment with a verified affidavit from Liz Irwin,

the publisher of the newspaper, attesting that The Countian met the list of requirements for

qualification under section 493.050. Specifically, the Irwin Affidavit averred that The Countian

was a newspaper of general circulation in Jefferson County published with the required level of

frequency, that it had been “admitted to the Post Office as second class/periodicals class matter in

Jefferson County,” that it had been published for more than three years, and that it had “a list of

bona fide subscribers voluntarily engaged as such, who have paid or agreed to pay a stated price

for a subscription for a definite period of time.”

 9
 In its judgment, the trial court concluded the Irwin Affidavit failed to establish The

Countian was qualified under section 493.050 because it relied on hearsay and was not the “best

evidence.” Specifically, the trial court pointed to two of Irwin’s statements: (1) that The Countian

had been “admitted to the Post Office as second class/periodicals class matter in Jefferson County”

and (2) that it had a list of subscribers. The trial court explained that to establish these facts would

require an affidavit or testimony from a representative of the United States Postal Service and a

copy of the actual list of subscribers.

 We conclude, however, that the Irwin Affidavit did not violate the best evidence rule,

which is inapplicable when “the fact to be proved is evidenced in a writing but also exists

independently of that writing.” Cooley v. Dir. of Revenue, 896 S.W.2d 468, 470 (Mo. banc 1995).

“[T]he best evidence rule does not exclude evidence based on personal knowledge even if

documents or other writings would provide some of the same information.” Id. Here, the issue

was not the content of the writings—the post office certificate and the subscriber list—but the fact

thereof, which existed independent of those documents.

 Additionally, the Irwin Affidavit was not hearsay and met the requirements of Rule

74.04(e) in that it was based on personal knowledge. The affidavit established that Irwin was the

publisher of MLM, that MLM owned and published The Countian and that Irwin had personal

knowledge of the facts set forth in the affidavit. Irwin’s role as publisher of The Countian—and

her confirmation that she had specific personal knowledge of the facts recited in the affidavit—

sufficiently established her knowledge of the relevant characteristics of The Countian, including

its publication frequency and history, its subscribers and its status with the United States Post

Office. See, e.g., Syngenta Crop Prot., Inc. v. Outdoor Equip. Co., 241 S.W.3d 425, 428 (Mo.

App. E.D. 2007) (finding affidavit met Rule 74.04(e) requirements because affiant’s role as

 10
company president was sufficient to establish familiarity with matters relating to vendor purchases

and affiant stated he had personal knowledge of the business relationship at issue).

 Because the Irwin Affidavit asserted facts that were based on personal knowledge and did

not violate the best evidence rule, the affidavit was admissible for summary judgment purposes.

See id.; Rule 74.04(e). The trial court erred in excluding the Irwin Affidavit and in granting

summary judgment in favor of Lewandowski on the issue of whether The Countian was qualified.

 MLM argues the trial court should have entered summary judgment in its favor because

the uncontroverted material facts established The Countian was indeed qualified under section

493.050 to publish notices of non-judicial foreclosure sales. Although the denial of a motion for

summary judgment “generally is not subject to appellate review,” such a denial “can be reviewed

when its merits are intertwined completely with a grant of summary judgment in favor of an

opposing party.” Bob DeGeorge Assocs., 377 S.W.3d at 596-97. Here, the merits of the denial of

MLM’s motion for summary judgment are completely intertwined with the grant of summary

judgment in favor of Lewandowski in that both motions posed the same question and the facts

material to each party’s claim to judgment as a matter of law were the same. See id. at 597.

 Lewandowski’s denials in his response to MLM’s Statement of Uncontroverted Material

Facts were ineffective to raise a genuine issue of dispute regarding The Countian’s qualifications

under section 493.050. Facts contained in affidavits “are accepted as true unless contradicted by .

. . . specific references to discovery, exhibits, or affidavits demonstrating a factual issue for trial.”

Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC, 422 S.W.3d 312, 320 (Mo. banc 2014)

(internal quotations and citations omitted). Because Lewandowski provided no evidence to

contradict the Irwin Affidavit or otherwise show The Countian was not qualified, the trial court

 11
erred in failing to grant MLM summary judgment on the issue of The Countian’s qualification

under section 493.050. Point IV is granted and Point V is denied as moot.

 In light of our conclusion that The Countian was qualified to publish notices of non-judicial

foreclosure sales in Jefferson County, and because there is no dispute that proper notice of the

foreclosure sale was published in The Countian, we deny as moot the Foreclosure Defendants’

final point on appeal, which asserts the trial court erred in granting summary judgment in favor of

Lewandowski and voiding the foreclosure sale based on the conclusion that failure to obtain the

required statutory notice voided the non-judicial foreclosure sale as a matter of law.

 III. Effect of the Failure to Register a Fictitious Name
 In its third point on appeal, MLM argues the trial court erred in granting summary judgment

in favor of Lewandowski and voiding the foreclosure sale because the judgment erroneously

concluded that MLM’s failure to register The Countian as a fictitious name voided the non-judicial

foreclosure sale as a matter of law. We agree.

 The trial court found that, because The Countian was not registered to do business in the

State of Missouri when the property was foreclosed, the published notice of the foreclosure sale

was “defective because it was an unlawful act” in violation of section 417.200. That statute

provides “it shall be unlawful for any person to engage in or transact any business in this state

under a fictitious name without first registering same with the secretary of state as herein required.”

Section 417.200. The failure to properly register is a misdemeanor. Section 417.230. The purpose

of section 417.200 is to protect parties to business transactions, to further fair-dealing, to enforce

business agreements and to prevent fraud. See Hanten v. Jacobs, 684 S.W.2d 433, 437-38 (Mo.

App. E.D. 1984).

 We have found no cases, and the parties have cited no cases, in which the failure to register

a fictitious name by one party has been held to invalidate a business transaction entered into by

 12
unrelated third parties. Instead, this Court has previously explained that an entity “may ‘adopt or

assume a fictitious name, different from its true name, and may make and enter into valid and

binding contracts under such assumed or fictitious name, even though the same is not

registered’ with the Secretary of State.” O’Gorman & Sandroni, P.C. v. Dodson, 478 S.W.3d 539,

544 n.2 (Mo. App. E.D. 2015) (quoting Coca-Cola Bottling Co. v. Groeper, 691 S.W.2d 395, 397

(Mo. App. E.D. 1985)). Although the failure to comply with the fictitious name statute may

constitute a misdemeanor on the part of the person who failed to register the name, the statute does

not penalize those doing business with or collateral to the entity operating under the fictitious

name. See, e.g., State v. Euge, 400 S.W.2d 119, 122 (Mo. 1966). This is especially true when the

cause of action is not dependent upon the identity of the entity failing to register; here,

Lewandowski’s claims were not dependent upon the identity of The Countian’s ownership and his

alleged injury was not caused by any failure to register.

 Any failure to register The Countian as a fictitious name with the State of Missouri would

not render void the foreclosure-sale notice at issue. The intent of the fictitious name statute is not

to penalize third parties, such as those selling the property at the foreclosure sale or the subsequent

purchaser of the property. And there is no dispute that Lewandowski had actual notice of the sale

and that notice of the sale was published.

 In sum, the mere fact that MLM had not registered and maintained with the Missouri

Secretary of State the exact name of The Countian, or its variations, did not disqualify The

Countian under sections 493.050 and 493.055 from publishing notices of non-judicial foreclosure

sales. Therefore, the trial court erred in finding Lewandowski was entitled to judgment as a matter

of law on that basis. Point III is granted.

 13
 Conclusion

 For the foregoing reasons, we reverse the judgment of the trial court awarding summary

judgment in favor of Lewandowski and voiding the foreclosure sale. The judgment in favor of

Lewandowski is vacated, and we enter judgment in favor of MLM pursuant to our authority under

Rule 84.14 (2021). We remand for further proceedings consistent with this opinion.

 ___________________________________
 MICHAEL E. GARDNER, Presiding Judge

James M. Dowd, J., concurs.
Lisa P. Page, J., concurs.

 14